KATHRYN EINSTEIN, Petitioner-Appellee, v. JASON H. NIJIM, Respondent-Appellant.

Fourth District No. 4—04—0766

Opinion filed June 15, 2005.

COOK, P.J., dissenting.

Daniel B. Kennedy, of Champaign, for appellant.

Sarah B. Tinney, of Erwin, Martinkus & Cole, Ltd., of Champaign, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In May 2000, petitioner, Kathryn Einstein, filed a petition requesting that the trial court (1) order respondent, Jason H. Nijim, to pay child support for the parties' daughter, Jordan Nijim (born June 10, 1995) and (2) set a reasonable visitation schedule for Jason and Jordan. Following a June 2004 hearing, the court ordered, in pertinent part, that Jason pay (1) $1,168.50 in monthly child support, which reflected 20% of Jason's monthly net income; (2) $7,588.32 for Jordan's past day-care expenses; (3) one-half of Jordan's future day-

care expenses; (4) $864.13 for Jordan's past medical expenses; and (5) one-half of Jordan's future medical expenses.

Jason appeals, arguing that the trial court erred by (1) incorrectly calculating his net income, (2) failing to order child support in an amount below the statutory guideline of 20% of Jason's net income, and (3) ordering him to pay one-half of Jordan's past day-care and medical expenses and one-half of such future expenses. We disagree and affirm.

## I. BACKGROUND

As stated above, in her May 2000 petition, Kathryn requested that the trial court (1) order Jason to pay child support for Jordan and (2) set a reasonable visitation schedule for Jason and Jordan.

From May 2000 until October 2003, the parties conducted discovery, unsuccessfully attempted to reach an agreement as to custody and child support, and individually and jointly were granted several continuances.

In mid-October 2003, the trial court entered a temporary order (1) requiring that Jason pay $1,029.53 in monthly child support and (2) denying Kathryn's request that Jason pay for one-half of Jordan's day-care expenses.

In December 2003, the parties entered into a written stipulation that (1) Kathryn would have custody of Jordan and (2) the only unresolved issues involved (a) visitation, (b) child support, and (c) child-support arrearages.

In May 2004, Jason filed a motion requesting that the trial court set his child-support obligation below the statutory guideline. Specifically, he alleged that his and Kathryn's relative financial resources and needs warranted a downward deviation. (Section 14(a)(1) of the Illinois Parentage Act of 1984 (Parentage Act) (750 ILCS 45/14(a)(1) (West 2000)) specifies that the trial court shall determine child support in accordance with section 505 of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/505 (West 2000)). Sections 505(a)(1) and (a)(2) require that the trial court set the minimum amount of child support for one child at 20% of the noncustodial parent's net income unless the court finds a reason to deviate from that percentage (750 ILCS 5/505(a)(1), (a)(2) (West 2002)).)

At the June 2004 hearing on the unresolved issues, Jason testified as an adverse witness that he was Jordan's biological father and had lived with Kathryn, to whom he was never married, and Jordan until early 1996. He currently lived with his wife, Dawn, her son, Christian, and the couple's 20-month-old daughter, Jennah. Jennah had special

medical needs because she was born prematurely and without a properly developed stomach. Jason and Dawn were expecting another child in late June 2004. Dawn was a stay-at-home parent, and she occasionally earned money by baby-sitting. Jason's May 2004 financial affidavit indicated, in pertinent part, that (1) his monthly gross income currently totaled approximately $6,600, (2) he received a $300 bimonthly automobile allowance from his employer, (3) his monthly expenses totaled just over $5,225, and (4) Jennah's medical expenses totaled approximately $833 per month. Jason acknowledged that he usually paid Jennah's doctors no more than $100 per month.

Jason testified on his own behalf that during 2003, his gross income totaled $76,455.50, which included a $10,000 bonus. Although Jason's annual bonuses were not guaranteed, they were "usually a sure thing." If the trial court ordered him to pay $1,029 in monthly child support, he would be unable to provide for Jennah's medical expenses or pay down her outstanding medical debt, which then totaled $13,000.

Kathryn testified that she currently worked for Cingular Wireless as a payroll officer. She had previously worked as a customer-service representative but had recently resigned from that position because it required her to work overtime and she wanted to spend more time with Jordan. Kathryn's gross income for the years 2000 through 2003 was $35,339, $37,060, $42,120, and $30,779, respectively. Her 2002 gross income included funds from an individual retirement account that she cashed out and a large amount of mandatory-overtime pay. Her 2003 income reflected her decrease in pay since becoming a payroll officer. During 2003, Kathryn could not have managed financially without temporary child support. Even with child support, she still relied on the "[g]enerosity of other people." Kathryn acknowledged that since late 1999, Jason had paid child support totaling $23,442.46. From 1998 through May 1999, Jason contributed $3,216 toward Jordan's day-care expenses. Jason stopped contributing money toward day-care expenses in May 1999, and between 2000 and 2003, Kathryn paid day-care expenses totaling $15,176.63. She currently paid $236 in monthly day-care expenses. Since 2000, Kathryn had paid $1,728.28 for Jordan's uninsured medical expenses. Kathryn's April 2004 financial affidavit indicated, in pertinent part, that (1) her monthly gross income currently totaled approximately $2,768 and (2) her monthly expenses totaled just over $2,966.

At the end of the hearing, the trial court instructed the parties to file written closing arguments, which they later did. In July 2004, after considering the evidence and the written closing arguments, the court ordered, in pertinent part, that Jason pay (1) $1,168.50 in

monthly child support, which reflected 20% of Jason's monthly net income; (2) $7,588.32 for Jordan's past day-care expenses; (3) one-half of Jordan's future day-care expenses; (4) $864.13 for Jordan's past medical expenses; and (5) one-half of Jordan's future medical expenses. In determining Jason's net income, the court rejected Jason's contention that Jennah's ongoing medical expenses should be deducted from his income because they constitute "medical expenditures necessary to preserve life or health" under section 505(a)(3)(h) of the Dissolution Act (750 ILCS 5/505(a)(3)(h) (West 2000)). The court determined that section 505(a)(3)(h) applies only to medical expenditures necessary to preserve the life or health of the noncustodial parent whose net income is being calculated.

This appeal followed.

## II. ANALYSIS

### A. The Trial Court's Calculation of Jason's Net Income

#### 1. *Deduction for Jennah's Ongoing Medical Expenses*

Jason first argues that the trial court improperly computed his net income by failing to deduct Jennah's ongoing medical expenses, which totaled approximately $830 per month. Specifically, he contends that those expenses constitute "medical expenditures necessary to preserve life or health" as that phrase is used in section 505(a)(3)(h) of the Dissolution Act (750 ILCS 5/505(a)(3)(h) (West 2000)). Because we conclude that Jennah's ongoing medical expenses are not "[e]xpenditures for repayment of debts" under section 505(a)(3)(h), we need not reach the issue of whether those expenses constitute "medical expenditures necessary to preserve life or health" (750 ILCS 5/505(a)(3)(h) (West 2000)).

In general, the trial court's net-income determination and child-support award lie within its sound discretion. *In re Marriage of Deem*, 328 Ill. App. 3d 453, 457, 766 N.E.2d 661, 665 (2002). In this case, however, Jason challenges the court's interpretation of section 505(a)(3)(h) of the Dissolution Act (750 ILCS 5/505(a)(3)(h) (West 2000)). "How a statute is interpreted is not a matter left to the trial court's discretion. It presents a question of law ***." *In re Marriage of Rogers*, 213 Ill. 2d 129, 135-36, 820 N.E.2d 386, 389-90 (2004). Thus, our review is *de novo*. See *In re Marriage of Lindman*, 356 Ill. App. 3d 462, 465 (2005) (reviewing *de novo* the trial court's interpretation of section 505).

In *People v. Jones*, 214 Ill. 2d 187, 193, 824 N.E.2d 239, 242 (2005), our supreme court recently discussed statutory interpretation as follows:

"The primary objective of statutory interpretation is to determine and give effect to the legislature's intent. [Citation.] This inquiry properly begins by examining the language of the statute at issue. [Citation.] The statute should be read as a whole and construed so that no part of it is rendered meaningless or superfluous. [Citation.] Where the legislature's intent is not clear from the statute's plain language, the court may examine the legislative history." Further, "[l]egislative intent can be ascertained from a consideration of the entire [a]ct, its nature, its object[,] and the consequences that would result from construing it one way or the other." *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 96, 566 N.E.2d 1283, 1302 (1990). In addition, courts must not construe words and phrases in isolation and, instead, should construe them in light of other relevant portions of the statute so that—if possible—no term is rendered superfluous or meaningless. *Girard v. White*, 356 Ill. App. 3d 11, 17, 826 N.E.2d 517, 523 (2005).

As earlier stated, section 14(a)(1) of the Parentage Act specifies that the trial court shall determine child support in accordance with section 505 of the Dissolution Act (750 ILCS 45/14(a)(1) (West 2000)). Section 505(a)(3) defines net income for the purpose of setting child support as the total of all income from all sources, minus several enumerated deductions. 750 ILCS 5/505(a)(3) (West 2000); *Slagel v. Wessels*, 314 Ill. App. 3d 330, 332, 732 N.E.2d 720, 721 (2000). Section 505(a)(3)(h) of the Dissolution Act sets forth one of those deductions, as follows:

"Expenditures for repayment of debts that represent reasonable and necessary expenses for the production of income, medical expenditures necessary to preserve life or health, reasonable expenditures for the benefit of the child and the other parent, exclusive of gifts. The court shall reduce net income in determining the minimum amount of support to be ordered only for the period that such payments are due and shall enter an order containing provisions for its self-executing modification upon termination of such payment period." 750 ILCS 5/505(a)(3)(h) (West 2000).

The parties and the trial court read the first sentence of section 505(a)(3)(h) as though the initial phrase "[e]xpenditures for repayment of debts that represent" applies only to the phrase immediately following it—that is, "reasonable and necessary expenses for the production of income." Under that interpretation, the phrase at issue here—"medical expenditures necessary to preserve life or health"—stands alone, unrelated to repayment of debts.

However, as stated above, we must not construe words and phrases in isolation and, instead, must construe them in light of other relevant portions of the statute. If we were to construe section 505(a)(3)(h) as

the parties and the trial court did, it would conflict with the second sentence of that section, which provides as follows:

"The court shall reduce net income in determining the minimum amount of support to be ordered only for the period that such payments are due and shall enter an order containing provisions for its self-executing modification upon termination of such payment period." 750 ILCS 5/505(a)(3)(h) (West 2000).

That sentence provides that a noncustodial parent's net income should be reduced only for the period of time that debt repayments are due, as evidenced by a specific repayment schedule. As this court noted in *Gay v. Dunlap*, 279 Ill. App. 3d 140, 147, 664 N.E.2d 88, 94 (1996), nothing in the language of the second sentence suggests that it only applies to some of the deductions allowed by the first sentence. We adhere to *Gay* and reaffirm that the second sentence of section 505(a)(3)(h) applies to each of the three deductions set forth in the first sentence of that section.

Nonetheless, we acknowledge that the first sentence of section 505(a)(3)(h) lacks clarity, and, for that reason, we may look beyond the section's language for additional guidance. See *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 397-98, 789 N.E.2d 1211, 1214 (2003) (when a statutory phrase is ambiguous, the court may look beyond the statutory language).

The legislative debates in this case indicate that the phrase "[e]xpenditures for repayment of debts that represent" applies to the phrase "medical expenditures necessary to preserve life or health." In particular, during the house debate, Representative Olson stated the following: "There are some other expenditures here *** that would be expenditures for repayment of debt that represent reasonable and necessary expenses for the production of income, medical expenditures, et cetera." 84th Gen. Assem., House Proceedings, June 29, 1985, at 211 (statements of Representative Olson).

■ In addition, the supplement to the historical and practice notes to section 505 of the Dissolution Act makes it clear that necessary medical expenses are deductible only if they constitute repayment of debt. The supplement provides, in pertinent part, as follows:

"Further, Public Act 84—888 added new categories of deductions in calculating 'net income' which were not previously included. *** [D]ebts, which the prior amendment barred from consideration if they were owed to private creditors, receive different treatment under Public Act 84—888. Expenditures for repayment of debts that are reasonable and necessary for the production of income are permissible deductions. *If the obligor has incurred debts for necessary medical expenses* or for other reasonable expenses for the

benefit of the other parent or the children, exclusive of gifts, *expenditures for the repayment of such debts are also deductible."* (Emphases added.) Ill. Ann. Stat., ch. 40, par. 505, Supplement to Historical & Practice Notes, at 177 (Smith-Hurd Supp. 1992). Construing section 505(a)(3)(h) of the Dissolution Act as a whole and in light of the legislative debates and the supplement to the historical and practice notes, we interpret the first sentence to read as follows: "Expenditures for repayment of debts that represent [either (1)] reasonable and necessary expenses for the production of income, [(2)] medical expenditures necessary to preserve life or health, or [(3)] reasonable expenditures for the benefit of the child and the other parent, exclusive of gifts." Accordingly, we hold that only necessary medical expenses that constitute "repayment of debt" may be deducted from net income under section 505(a)(3)(h) of the Dissolution Act (750 ILCS 5/505(a)(3)(h) (West 2000)). Because Jason argues only that the trial court improperly computed his net income by failing to deduct Jennah's *ongoing* medical expenses, we affirm the court's refusal to deduct such expenses.

In so concluding, we reiterate what this court wrote in *Gay*, 279 Ill. App. 3d at 147-48, 664 N.E.2d at 94:

"[W]e note the purpose of subsection (a)(3) (including subsection (h)) is simply to define the noncustodial parent's net income (750 ILCS 5/505(a)(3)(h) [(West 2000)]). Subsection (a)(3) is not intended to determine what the 'fair' amount of child support is, nor does it have anything to do with how much child support is to be paid. All it does is define net income. Expenses which it would be improper to deduct under subsection (a)(3) can still play a role in a trial court's decision regarding departure from the statutory guidelines. As noted above, 'the financial resources and needs of the non[ ]custodial parent' [(750 ILCS 5/505(a)(2)(e) (West 2000))] may legitimately be considered in this context."

### 2. *Jason's 2003 Work Bonus and Automobile Allowance*

■ Jason next argues that the trial court improperly computed his net income by including his 2003 work bonus (which totaled $10,000) and his $300 bimonthly automobile allowance. We disagree.

### a. Jason's 2003 Work Bonus

Jason initially contends that it was unfair to include his $10,000 bonus in calculating his net income because it was not guaranteed from year to year. However, even accepting that Jason's bonus was not recurring, "the Act does not provide for a deduction of nonrecurring income in calculating net income for purposes of child support." *In re Marriage of Hart*, 194 Ill. App. 3d 839, 850, 551 N.E.2d 737, 744 (1990);

see 750 ILCS 5/505(a)(3) (West 2000). Thus, as the Second District held in *Lindman*, 356 Ill. App. 3d at 467, if we were to conclude that certain income—by virtue of its lack of regularity—should be excluded from the net-income calculation, we would read into the plain language of the statute limitations and conditions not expressed by the legislature.

Further, our supreme court has stressed that the trial court's determination of a noncustodial parent's net income must focus on that parent's income at the time the court makes its determination. *Rogers*, 213 Ill. 2d at 138, 820 N.E.2d at 391. In that regard, the *Rogers* court stated as follows:

"Few, if any, sources of income are certain to continue unchanged year in and year out. People can lose their jobs, interest rates can fall, business conditions can wipe out profits and dividends. Accordingly, the relevant focus under section 505 is the parent's economic situation at the time the child[-]support calculations are made by the court. If a parent has received payments that would otherwise qualify as 'income' under the statute, nothing in the law permits those payments to be excluded from consideration merely because like payments might not be forthcoming in the future." *Rogers*, 213 Ill. 2d at 138, 820 N.E.2d at 391.

In accordance with the aforementioned decisions, we conclude that the trial court did not err by including Jason's 2003 work bonus in its net-income calculation.

In so concluding, we note that although the trial court is required to include all income, regardless of its recurring nature, in calculating net income, the "nonrecurring nature of an income stream is not irrelevant." *Rogers*, 213 Ill. 2d at 139, 820 N.E.2d at 391. If the noncustodial parent is unlikely to continue receiving certain income in the future, the trial court may consider that fact when it determines whether to deviate from the statutory child-support guidelines under section 505(a)(2) of the Dissolution Act (750 ILCS 5/505(a)(2) (West 2000)). Such was not the case here because the evidence showed that although Jason's annual bonuses were not guaranteed, they were "usually a sure thing." Moreover, if the income stream ends, the noncustodial parent may seek to modify the child-support order, pursuant to section 510(a) of the Dissolution Act (750 ILCS 5/510(a) (West 2000)). *Rogers*, 213 Ill. 2d at 139, 820 N.E.2d at 391.

### b. Jason's Automobile Allowance

Jason also complains that the trial court improperly included his $300 bimonthly automobile allowance in calculating his net income because that allowance "would not be included in income for federal income tax purposes." We disagree.

In *Rogers*, 213 Ill. 2d at 137, 820 N.E.2d at 390, the supreme court rejected a noncustodial parent's argument that certain income— namely, annual gifts from his parents—should not be included as part of his net income because the gifts were not subject to federal taxation. In so doing, the supreme court stated as follows:

"[A] variety of payments will qualify as 'income' for purposes of section 505(a)(3) of the Act that would not be taxable as income under the Internal Revenue Code. As our appellate court has recognized, however, the Internal Revenue Code is designed to achieve different purposes than our state's child[-]support provisions. See *In re Marriage of McGowan*, 265 Ill. App. 3d 976, 979[, 638 N.E.2d 695, 698] (1994). Accordingly, it does not govern the determination of what constitutes 'income' under the statutory child[-]support guidelines enacted by the General Assembly." *Rogers*, 213 Ill. 2d at 137, 820 N.E.2d at 390.

Consistent with *Rogers*, the fact that Jason's automobile allowance was not subject to taxation by the federal government is irrelevant to the determination of whether it should be included in his net income. As Kathryn points out, Jason receives his automobile allowance directly from his employer, and he may choose to apply that allowance to either automobile or other expenses. Thus, Jason's automobile allowance "represented a valuable benefit" to him that increased his income and facilitated his ability to support Jordan. See *Rogers*, 213 Ill. 2d at 137, 820 N.E.2d at 390 (concluding that the noncustodial parent's annual gifts from his parents qualified as income because they "represented a valuable benefit" to him that enhanced his wealth and facilitated his ability to support his child). Accordingly, we conclude that the trial court did not err by including Jason's $300 bimonthly automobile allowance in the court's net-income calculation.

## B. The Child-Support Award

■ Jason also argues that the trial court erred by refusing to deviate downward from the 20% statutory guideline (750 ILCS 5/505(a)(1) (West 2000)) in determining child support. Specifically, he contends that his and Kathryn's relative financial resources and needs warranted a downward deviation. We disagree.

As earlier stated, section 14(a)(1) of the Parentage Act (750 ILCS 45/14(a)(1) (West 2000)) specifies that the trial court shall determine child support in accordance with section 505 of the Dissolution Act. Section 505(a)(1) of the Dissolution Act establishes guidelines for determining the percentage of a noncustodial parent's net income that should be paid as child support. 750 ILCS 5/505(a)(1) (West 2000). For example, in the case of one child, the minimum amount of child support that the trial court should order is 20% of the noncustodial

parent's net income. The trial court must follow the statutory guidelines unless the court makes a finding that an "application of the guidelines would be inappropriate." 750 ILCS 5/505(a)(2) (West 2000); see also *In re Keon C.*, 344 Ill. App. 3d 1137, 1141-42, 800 N.E.2d 1257, 1261 (2003), quoting *In re Marriage of Stanley*, 279 Ill. App. 3d 1083, 1085, 666 N.E.2d 340, 341 (1996) (" 'Compelling reasons' " must exist to allow the trial court to deviate from the guidelines). In determining whether compelling reasons exist for deviating from the statutory guidelines, the court may consider several factors. Those factors include, but are not limited to, the following: (1) the financial resources and needs of the child, (2) the financial resources and needs of the custodial and noncustodial parents, (3) the standard of living the child would have enjoyed had the parents' relationship not ended, and (4) the child's physical and emotional condition (750 ILCS 5/505(a)(2) (West 2000)). We will not reverse the trial court's determination as to the appropriate amount of child support absent an abuse of discretion. *Keon C.*, 344 Ill. App. 3d at 1142, 800 N.E.2d at 1261.

In denying Jason's request to downwardly deviate from the statutory guideline in setting child support, the trial court specifically noted that a "demonstrable disparity" existed between Jason's monthly income and Kathryn's. The court also rejected Jason's argument that Jennah's medical expenses necessitated a downward deviation. In that regard, the court stated, in pertinent part, as follows:

> "Although the [c]ourt has the discretionary power to consider the medical needs of [Jennah] in assessing [Jason's] financial condition ***, the [c]ourt is nonetheless of the view that such an exercise of discretion would be inappropriate in the instant case. *** [Jason] has made choices since Jordan's birth[,] the consequences of which Jordan should not bear. The [c]ourt is of the opinion that it would be contrary to Jordan's best interest for her, in essence, to subsidize [Jason's] subsequent marriage with a reduction of the child support to which she is presumptively entitled. *** That [Jason] chose to marry and raise another family was his right, but he now must abide that election subject to the just constraints of the law."

In addition, the evidence showed that (1) although Jennah's monthly medical expenses totaled approximately $833, Jason usually paid her doctors no more than $100 per month; (2) Kathryn's monthly expenses exceeded her monthly income; and (3) Jason and Dawn voluntarily decided to extend their family before the trial court determined Jason's child-support obligation as to Jordan. It is the duty of the trial court—not this court—to assess the witnesses' credibility and consider the relevant factors. Here, the trial court did just that. Having carefully

reviewed the court's decision under the appropriate standard of review, we conclude that the court did not abuse its discretion by declining Jason's request to deviate downward from the statutory guideline in determining child support.

## C. Jordan's Day-Care and Medical Expenses

■ Last, Jason argues that the trial court erred by ordering him to pay one-half of Jordan's past day-care and medical expenses and one-half of such future expenses. We disagree.

### 1. *The Previous Denial of Kathryn's Request Regarding Jordan's Day-Care Expenses*

Jason first contends that the trial court was barred from ordering him to pay one-half of Jordan's ongoing day-care expenses because in October 2003, a different trial judge denied Kathryn's request regarding day-care expenses. We disagree.

The problem with Jason's contention is that the October 2003 order was a *temporary* order. As this court wrote in *In re Marriage of Fields*, 283 Ill. App. 3d 894, 901, 671 N.E.2d 85, 90 (1996),

"A temporary order—by its very nature—is *provisional* in character and continues only during the pendency of the action. [Citation.] When the matter that is the subject of the temporary order comes before the court for a hearing on the merits, the temporary order has fulfilled its purpose and is superseded by the final—or permanent—order." (Emphasis in original.)

Because a temporary order does not constitute a final judgment on the merits, "such an order cannot be regarded as *res judicata* of the issues raised by the parties." *Fields*, 283 Ill. App. 3d at 901, 671 N.E.2d at 90.

Thus, because the October 2003 order denying Kathryn's request that Jason pay for one-half of Jordan's day-care expenses was a temporary order, the successor trial judge was not bound by the findings of the first judge. Accordingly, we conclude that the court was not barred from ordering Jason to pay one-half of Jordan's day-care expenses.

### 2. *The Parties' Previous Agreement*

Jason also contends that the trial court was barred from entering an order as to Jordan's past and ongoing day-care and medical expenses because the parties had previously agreed that the only unresolved issues involved visitation, child support, and child-support arrearages.

Initially, we note that Jason has failed to cite any authority in support of his contention. Nor does he support his contention with logical

and reasoned argument. It is a rudimentary rule of appellate practice that an appellant may not make a point merely by stating it without presenting any argument in support. See *Girard*, 356 Ill. App. 3d at 17, 826 N.E.2d at 522 ("bare contentions that fail to cite any authority do not merit consideration on appeal"). Jason's brief also fails to comply with Supreme Court Rule 341(e)(7) (188 Ill. 2d R. 341(e)(7)), which provides, in pertinent part, that the argument section of an appellant's brief "shall contain the contentions of the appellant and the reasons therefor, with citation of the authorities." Arguments that do not satisfy Rule 341(e)(7) do not merit consideration on appeal and may be rejected for that reason alone. *Prairie Rivers Network v. Illinois Pollution Control Board*, 335 Ill. App. 3d 391, 409, 781 N.E.2d 372, 385 (2002). In light of Jason's failure to comply with Rule 341(e)(7), we conclude that he has forfeited this issue on appeal.

In addition, Jason has forfeited this issue on appeal by failing to raise it before the trial court. Jason did not object at the June 2003 hearing at which Kathryn offered testimony as to Jordan's past and future day-care and medical expenses. Nor did he object when Kathryn filed her written closing argument, in which she requested, in pertinent part, that the court order Jason to pay one-half of Jordan's past day-care and medical expenses and one-half of such future expenses. See *In re Marriage of Wolff*, 355 Ill. App. 3d 403, 414, 822 N.E.2d 596, 607 (2005). (a party's failure to raise an issue in the trial court results in forfeiture of the issue).

## III. CONCLUSION

In closing, we commend the trial court for its well-crafted and very thoughtful written order, which we found quite helpful.

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

TURNER, J., concurs.

PRESIDING JUSTICE COOK, dissenting:

I agree with much of the majority decision. I agree we should interpret statutes to give effect to the legislature's intent. I agree that even if only medical expenses that constitute "repayment of debt" may be deducted from net income under section 505(a)(3)(h), those expenses may still play a role in a trial court's decision regarding departure from the statutory guidelines. I also agree that despite the guidelines, the setting of child support is a judicial function, where the trial court is required to exercise its best judgment.

My disagreement centers on the trial court's refusal to consider the medical expenses in this case. Jason has two children, Jordan and Jennah, who has special medical needs because she was born prematurely and without a properly developed stomach. According to the trial court, if there are not sufficient funds to take care of Jennah, that is just too bad. " 'The [c]ourt is of the opinion that it would be contrary to Jordan's best interest for her, in essence, to subsidize [Jason's] subsequent marriage with a reduction of the child support to which she is presumptively entitled.' " 358 Ill. App. 3d at 273.

The trial court's refusal to consider Jennah's needs is wrong as a matter of law. The argument that the first child is entitled to the full guidelines amount of 20% before the needs of the second child may be considered is wrong in policy and in law and may violate equal protection. See *Greiman v. Friedman*, 90 Ill. App. 3d 941, 948-49, 414 N.E.2d 77, 83-84 (1980) (abuse of discretion to refuse to consider testimony concerning financial obligations to second family). Whatever the trial court's view of Jason, Jordan and Jennah stand on an equal footing. See *Rawles v. Hartman*, 172 Ill. App. 3d 931, 934, 527 N.E.2d 680, 681-82 (1988) (support obligations extend equally to every child). The trial court was not allowed to ignore Jennah in setting child support for Jordan. Nor was the trial court allowed to punish Jason for his remarriage.

It has been suggested that the language of section 505(a)(3)(g) allowing the deduction of "[p]rior obligations of support or maintenance actually paid pursuant to a court order" (750 ILCS 5/505(a)(3)(g) (West 2000)) carries forward the rule that a divorced spouse's obligations to the first family must be met before the obligations to the second family can or will be considered. *In re Marriage of Potts*, 297 Ill. App. 3d 110, 114-15, 696 N.E.2d 1263, 1266 (1998). I would suggest that use of the term "prior obligations" simply expresses the desire that child support be calculated based on the current situation and not on consideration of future obligations or attempts to predict what may happen in the future.

*Potts*'s statement of the "first family" rule is not supported by the cases it cites. *In re Marriage of Zukausky*, 244 Ill. App. 3d 614, 624, 613 N.E.2d 394, 402 (1993), mentions the rule but goes on to say "[t]he court should not ignore the supporting parent's obligations to a second family and should consider that factor in deciding the appropriate modification award for the first family." *Roqueplot v. Roqueplot*, 88 Ill. App. 3d 59, 63, 410 N.E.2d 441, 444 (1980), involved a petition to modify child support after the petitioner married a woman who had five children. Support of other children may be disregarded where there is no legal or moral obligation to provide it. *In re Marriage of Vucic*, 216 Ill. App. 3d 692, 704, 576 N.E.2d 406, 414 (1991).

We should also recognize that the trial court did not simply order payment of the guidelines amount, 20% of Jason's monthly net income, for Jordan. In addition, the trial court ordered Jason to pay one-half of Jordan's day-care expenses and medical expenses. Those expenses are normally a part of the guidelines amount. The guidelines are useful in allowing support to be set in a fair amount without considering detailed and perhaps confusing evidence as to the cost of the child's housing, food, clothing, and medical expenses. When the component parts of the guidelines amount are added to it, there is duplication, which may be permissible if the court believes a higher award than the guidelines amount is appropriate.

I would remand for a new hearing on child support, at which the trial court would consider Jennah's medical expenses.