No. 3-09-0829

Filed November 15, 2010

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2010

| | | |
|---|---|---|
| In re MARRIAGE OF | ) | Appeal from the Circuit Court |
| MICHAEL ANDERSON, | ) | of the 10th Judicial Circuit, |
| | ) | Tazewell County, Illinois, |
| Petitioner-Appellee, | ) | |
| | ) | |
| and | ) | No. 01-D-428 |
| | ) | |
| MOLLY A. MURPHY, f/k/a | ) | Honorable |
| Molly A. Anderson, | ) | Jerelyn D. Maher & |
| | ) | J. Peter Ault, |
| Respondent-Appellant. | ) | Judges, Presiding. |

MODIFIED UPON DENIAL OF REHEARING
JUSTICE LYTTON delivered the opinion of the court:

Respondent Molly Murphy, f/k/a Molly A. Anderson, appeals from the postjudgment order resolving all pending issues and dissolving her marriage to petitioner, Michael Anderson. On appeal, Molly argues that the trial court erred in (1) calculating net income for purposes of child support, (2) terminating maintenance, (3) awarding attorney fees, (4) altering the percentage of responsibility for the children's medical expenses, (5) denying her motion to return personal property, (6) relieving Michael of his duty to file amended tax returns, and (7) modifying Michael's previously imposed financial reporting requirements. We affirm in

part, remand in part, reverse and remand in part, and vacate and remand in part.

Michael Anderson and Molly Murphy were married in January of 1993. Molly gave birth to twin daughters, Janelle and Kaleigh, on December 27, 1994.

During the marriage, Michael, who has a master's degree from the University of Illinois, worked in the financial industry. In 1998, he was employed by Komatsu and earned a gross income of $61,573. He also received a yearly dividend from stock he owned in his family's closely held corporation, AEC Holding Company.

Molly was diagnosed with fibromyalgia in 1990 and was employed by Caterpillar. After she married Michael, she continued to work for Caterpillar until the birth of the twins. Shortly thereafter, she returned to work. In December of 1995, she was placed on disability due to her illness. At that time, she was earning $52,000 per year, plus incentives. Molly currently receives a disability payment from Caterpillar, as well as social security benefits.

Michael petitioned for dissolution of the marriage in July 2001. On February 13, 2002, an agreed order was entered awarding custody of the girls to Molly. On August 25, 2004, a judgment of dissolution of marriage was entered dissolving the marriage and incorporating a stipulated visitation order. Under the terms of the stipulation, Michael had visitation with the twins every other

weekend, every Wednesday evening and alternating holidays.

On September 2, 2004, the trial court entered a supplemental judgment that addressed the marital property issues but reserved determinations of child support and maintenance. According to the terms of the supplemental judgment, the trial court awarded Mike his AEC stock as nonmarital property for purposes of maintenance and directed him to provide Molly with copies of his income tax returns, including any attached schedules, W-2 forms and 1099 forms. For the children's medical expenses, Michael was responsible for 60% of the expenses not covered by insurance and Molly was responsible for 40%. Marital investments were divided equally between the parties, and the marital residence was transferred to Molly in exchange for a $40,000 payment to Michael. Michael was also ordered to inform Molly of any dividends he received from his shares of AEC stock and pay 28% of his net dividends as child support.

In December 2006, the trial court entered an order establishing that Michael would pay the sum of $900 per month in reviewable maintenance and that he would pay 28% of his statutory net income for child support. At that time, Michael was employed by Nextel, earning a salary of approximately $50,000 per year.

During the next two years, the parties filed numerous petitions for rules to show cause and motions to modify the terms of previous orders. In addition to the petitions, Molly filed a

3

"Motion for Return of Children's Property."  The motion alleged that the girls had taken personal property to Michael's residence during their visits and that Michael refused to return the items. The list of property included American Girl dolls, American Girl accessories, Disney DVDs, board games, a basketball hoop and clothing.

In September 2008, Michael filed a motion for review of Molly's $900 monthly maintenance award, as well as a petition to modify the medical expense allocation.  In response, Molly filed a petition to modify child support and maintenance, seeking an increase in both based on Michael's new position with Habegger Corporation, in which he earned approximately $62,500 per year.

The motions and petitions were consolidated, and the trial court conducted hearings for several days.  Michael testified that his shares of AEC stock had been purchased by the company as part of a reverse stock split in an attempt to reduce the number of outstanding shares.  The reverse split affected all 11 shareholders.  Those five shareholder who owned less than 5% of the company's outstanding shares were required to cash out their holdings based on a fair market valuation.  The company forced Michael to sell all of his shares of stock because he owned only 2.16%.  The reverse stock split went into effect on December 31, 2008.  He received $192,780 as a result of the split and would no longer receive AEC dividends.

Testimony and exhibits established that the income generated by Michael's shares of AEC stock had been substantial. In 2005, he received dividend income in the amount of $171,760; in 2006, he received $197,887; and in 2007, he received $190,845. The call of the shares by the company resulted in Michael sustaining a capital loss of $65,743. Michael testified that he used the proceeds from the sale of the stock to purchase gold coins.

Michael further testified that most of the items listed in Molly's motion to return the children's property were items he had purchased for the girls or gifts they had received from his parents. He never refused to return things the children brought with them to his house. He stated that he packed all of the girls' belongings up and gave them to Goodwill because he had not had visitation with them for at least three years.

Molly testified that her medical condition and financial situation have not changed since 1995. She and the girls have been receiving social security benefits since 1996 due to her illness. She testified that she handles all transportation and scheduling for the children. At the time of the hearing, Michael had not seen the girls or exercised his visitation for almost three years. The trial court found that Michael had violated numerous court orders, but reserved the issue of attorney fees.

In a later petition before the court, Molly again sought attorney fees for the legal expenses she incurred. In support, she

5

submitted affidavits from four attorneys who represented her during the divorce proceedings. Molly claimed that she incurred $74,547 in fees seeking to enforce previous court orders and responding to Michael's motion to terminate maintenance.

Both parties filed financial affidavits in addition to their testimony. Michael's affidavit, dated December 1, 2008, indicated that he was a territory manager for Habegger, earning a monthly salary of $5,100. Minus deductions for state and federal taxes, social security and child support, Michael reported a net monthly earned income of $1,510. He also reported dividend income of $1,966 from his AEC stock, for a total income of $3,476. His monthly expenses totaled $3,673. Michael listed $314,578 in nonmarital assets and $43,470 in nonmarital debt. He also stated that he had $22,024 in marital assets and no marital debt.

Molly's 2008 financial affidavit reported a net earned income of $3,356 per month, plus additional monthly income from maintenance and child support, for a total income of $7,024 per month. Molly stated that she had monthly household expenses totaling $4,034 and medical expenses equivalent to $772. Her total monthly expenses for the house, the children and her equaled $8,279. She listed her nonmarital assets at a value of more than $676,500 and her nonmarital debt as $161,725. The affidavit further stated that she had $42,000 in marital assets and no marital debt.

The trial court issued a written order addressing all post-dissolution motions. In its order, the court noted that the parties had not communicated effectively to resolve any issues and had not made good-faith efforts to comply with court orders. It ordered Michael to pay $31,892.88 for past child support and maintenance. Regarding income tax returns, the court stated that Michael had not filed the amended returns he was instructed to file for improperly claiming Kaleigh as a dependent when he failed to pay child support. To remedy the disadvantage to Molly, the court directed that Molly be allowed to claim both children as exemptions on her income tax returns until the girls turned 18 or completed high school. The court also modified Michael's financial reporting obligation to require him to provide Molly with a copy of his W-2 forms each April and to inform Molly of any changes in his employment.

The trial court declined to treat the sale of Michael's AEC stock as income, concluding that the stock was nonmarital property and that Michael had no control over the sale of the stock. Since Michael was no longer receiving AEC dividends, the circuit court found a substantial change in circumstances had occurred and modified child support to the statutory percentage of Michael's current net income from his full-time employment, ordering him to pay $528.53 every two weeks. The trial court also refused Molly's request to require Michael to pay child support based upon any

7

gifts he may receive from his family.

Further, the trial court modified the children's uncovered medical expense payment ratio to an equal 50% for both parties. The court also denied Molly's request for the return of various toys and games that the girls kept at Michael's house, finding that most of the items were gifts from Michael or his parents.

On the issue of maintenance, the trial court found that the stock sale dramatically reduced Michael's income and terminated maintenance effective June 1, 2009. Last, the trial court ordered Michael to pay $25,000 of Molly's attorney fees.

ANALYSIS

I

Molly argues that the trial court erred as a matter of law in determining Michael's net income for purposes of child support under section 505(a)(3) of the Illinois Marriage and Dissolution of Marriage Act (Dissolution Act) (750 ILCS 5/505(a)(3) (West 2008). Specifically, she claims that the trial court erred by ignoring three sources of income: (1) the proceeds from the sale of the AEC stock; (2) bonus/commission income from his new employer; and (3) gifts and loans that Michael may receive from his parents.

Generally, the trial court's net income determination and child support award lie within its discretion. In re Marriage of Deem, 328 Ill. App. 3d 453 (2002). However, Molly challenges the court's interpretation of section 505(a)(3) of the Dissolution Act.

8

The interpretation of a statute is not a matter left to the trial court's discretion; it presents a question of law that we review <u>de novo</u>.  <u>Einstein v. Nijim</u>, 358 Ill. App. 3d 263 (2005).

The primary goal of statutory interpretation is to ascertain and give effect to the legislature's intent.  The best indicator of legislative intent is the plain and ordinary language of the statute itself.  <u>People v. Pack</u>, 224 Ill. 2d 144 (2007).  Where the statutory language is clear, it must be given effect without resort to extrinsic aids of interpretation.  <u>In re Marriage of Rogers</u>, 213 Ill. 2d 129 (2004).  Legislative intent can be ascertained from consideration of the entire statute, its nature and objective, and the consequences that would result from construing it one way or the other.  <u>Fumarolo v. Chicago Board of Education</u>, 142 Ill. 2d 54 (1990).

A.  AEC Reverse Stock Split

Molly first claims that the reverse stock split proceeds Michael received should be treated as income subject to child support.

Section 505(a)(3) of the Dissolution Act defines net income as "the total of all income from all sources," minus several enumerated deductions.  The statute does not define "income" for purposes of determining child support.  In such cases, courts give undefined words their plain and ordinary meaning.  See <u>In re Estate of Poole</u>, 207 Ill. 2d 393 (2003).

In Rogers, the supreme court discussed the plain and ordinary meaning of the term "income":

> "As the word itself suggests, 'income' is simply 'something that comes in as an increment or addition ***: a gain or recurrent benefit that is usu[ually] measured in money ***: the value of goods and services received by an individual in a given period of time.' Webster's Third New International Dictionary 1143 (1986). It has likewise been defined as 'the money or other form of payment that one receives, usu[ually] periodically, from employment, business, investments, royalties, gifts and the like.' Black's Law Dictionary 778 (8th ed. 2004)." Rogers, 213 Ill. 2d at 136-37.

Illinois courts have also defined "income" as "'"a gain or profit" [citation] and is "ordinarily understood to be a return on an investment of labor or capital, thereby increasing the wealth of the recipient" [citations].'" In re Marriage of Worrall, 334 Ill. App. 3d 550, 553-54 (2002).

Under these definitions, a variety of payments qualify as income under section 505(a)(3). Courts have included individual retirement account (IRA) disbursements representing deferred employment earnings, receipt of company stock from employment stock options, worker's compensation awards and the proceeds from pensions as income under the Dissolution Act. See In re Marriage

10

of Lindman, 356 Ill. App. 3d 462 (2005); In re Marriage of Colangelo, 355 Ill. App. 3d 383 (2005); Department of Public Aid ex rel. Jennings v. White, 286 Ill. App. 3d 213 (1997); In re Marriage of Klomps, 286 Ill. App. 3d 710 (1997). However, using the same statutory definition, other courts have determined that withdrawals from self-funded IRAs and proceeds from the sale of residential property do not constitute income under section 505(a)(3). See In re Marriage of O'Daniel, 382 Ill. App. 3d 845 (2008); In re Marriage of Baumgartner, 384 Ill. App. 3d 39 (2008).

In O'Daniel, the appellate court determined that the father's IRA disbursements did not constitute income because IRA accounts are ordinarily self-funded by the individual account holder. The court noted that "[w]hen an individual withdraws money he placed into an IRA, he does not gain anything as the money was already his. Therefore, it is not a gain and not income." O'Daniel, 382 Ill. App. 3d at 850. In reaching its conclusion, the court reasoned that the only portion of the IRA that would constitute a gain for the individual, and therefore income for purposes of child support, would be the interest or appreciation earnings from the IRA. O'Daniel, 382 Ill. App. 3d at 850; see also Baumgartner, 384 Ill. App. 3d at 57 (where parent sells home and uses proceeds to purchase new home, proceeds are not actually available as income).

In this case, the proceeds from the reverse stock split of Michael's AEC shares did not involve a gain or recurring benefit or

employment compensation. Michael received the proceeds as a result of an involuntary purchase of stock he owned, which resulted in a capital loss. In reality, the forced sale reduced Michael's wealth because he no longer received the yearly dividends the stock generated. While the dividends or earnings the stock produced constituted income under section 505(a)(3), the sale of the stock did not. The cash proceeds took the place of the former shares of stock. Michael then used those proceeds to purchase gold coins. The asset already belonged to Michael, and the proceeds were used to purchase another investment asset. Accordingly, the proceeds do not qualify as income for child support purposes.

In reaching our conclusion, we note that the distribution of stock may constitute income for child support purposes if the stock is sold pursuant to an employment bonus-based option. See Colangelo, 355 Ill. App. 3d 383. Here, however, the sale of Michael's stock was necessitated by the company's decision to implement a reverse stock split of minority shareholders, a decision over which Michael had no control.[1] He then utilized the

---

[1] The record indicates that the company forced all shareholders who owned less than 5% to sell their stock. The letter to the shareholders explicitly stated that all stockholders who owned less than 5% "will be cashed out at the current appraised value per share and will no longer own stock in AEC Holding Company."

proceeds to purchase other investment assets. Under these circumstances, the proceeds do not qualify as "net income" under section 505(a)(3).

## B. Gifts From Parents

Molly also argues that the trial court erred as a matter of law in failing to include gifts that Michael may receive from his family as income under section 505(a)(3) of the Dissolution Act.

In calculating net income, the trial court is required to include all income, regardless of its recurring nature. Einstein, 358 Ill. App. 3d at 271. The relevant focus under section 505(a)(3) is the noncustodial spouse's economic situation at the time the child support calculations are made. If a parent receives payments that would qualify as "income" under the Dissolution Act, those payment may not be excluded on the basis that they might not be received in the future. Rogers, 213 Ill. 2d at 138. The trial court's net income determination lies within its sound discretion. Deem, 328 Ill. App. 3d at 457.

In Rogers, the noncustodial father received yearly gifts and loans from his parents totaling more than $46,000, which he had never been required to repay. The court concluded that the annual gifts were income for purposes of determining child support because they represented a valuable benefit to the father that enhanced his wealth and facilitated his ability to support his son. Rogers, 213 Ill. 2d at 137.

13

In this case, Molly requested language in the court's order requiring Michael to include 28% of any gifts or loans he may receive from his parents in his child support payments in accordance with statutory guidelines. The evidence demonstrated that Michael received significant annual gifts from his parents, including substantial "loans" without repayment and a vehicle. These gifts appear to represent a continuing source of income that he has received over the course of his adult life. Moreover, they are a valuable benefit to Michael that facilitate his ability to support the girls. The trial court should not exclude such payments simply because similar payments may not occur in the future. See Rogers, 213 Ill. 2d at 138. Accordingly, any substantial gifts from Michael's parents should have been included in his net income, and the trial court abused its discretion in failing to consider them for child support purposes. We therefore remand the matter for the trial court to enter a modified child support order to include as income gifts Michael receives from his family.

## C. Bonus/Commission

Next, Molly argues that the trial court improperly computed Michael's net income by failing to include any bonus or commission that he may earn.

As with Michael's gifts, the trial court's refusal to include 28% of Michael's bonuses in its calculation of net income was an

abuse of discretion.   In <u>Einstein</u>, the father maintained it was unfair to include his $10,000 bonus in calculating net income because it was not guaranteed from year to year.   <u>Einstein</u>, 358 Ill. App. 3d 263.   The <u>Einstein</u> court held that the bonus payment he received, although possibly not recurring, should be included for support purposes.   <u>Einstein</u>, 358 Ill. App. 3d at 271.   Like the father in <u>Einstein</u>, Michael's bonus is not guaranteed.   However, Michael is entitled to one if he satisfies certain employee expectations, and any bonus or commission he earns is income for purposes of determining child support.   Accordingly, the trial court erred in refusing to include his bonus in the child support award.   On remand, the trial court should order Michael to pay 28% of any bonus or commission he earns from his employer as child support.

II through VII

The following material in sections II through VII is not to be published pursuant to Supreme Court Rule 23.   166 Ill. 2d R. 23.

[THE FOLLOWING MATERIAL IS NOT PUBLISHED

PURSUANT TO SUPREME RULE COURT RULE 23.]

Molly claims that the trial court erred as a matter of law and abused its discretion in terminating her maintenance award.

Section 510 of the Dissolution Act provides that orders for the payment of maintenance may be modified by a trial court upon a showing of a substantial change in circumstances.   A "substantial

15

change in circumstances" is shown when either the needs of the spouse receiving maintenance or the ability of the other spouse to pay maintenance has changed. In re Marriage of Neuman, 295 Ill. App. 3d 212 (1998). The statutory factors to consider when reviewing maintenance include: (1) "the property, including retirement benefits, awarded to each party under the judgment of dissolution *** and the present status of the property"; (2) "the increase or decrease in each party's income since the prior judgment"; and (3) "any other factors found to be just and equitable." 750 ILCS 5/510(a-5)(6),(7) & (9) (West 2008). The party seeking modification of a maintenance order bears the burden of showing the change and presenting evidence of a motive other than evasion of financial responsibility. In re Marriage of Imlay, 251 Ill. App. 3d 138 (1993).

In this case, the trial court terminated Michael's $900 per month maintenance obligation solely because Michael no longer received AEC dividends. While the trial court recognized that Michael no longer owned AEC stock, the court neglected to consider the change in status of the property as a factor in maintenance modification. The plain language of section 510(a-5) requires the court to consider both marital and nonmarital property and the current status of the property awarded in the dissolution judgment. 750 ILCS 5/510(a-5)(6) (West 2008). Accordingly, the trial court erred as a matter of law in failing to consider all of Michael's

16

nonmarital property in terminating Molly's maintenance award. We therefore remand this issue to allow the trial court to review Michael's request for modification of maintenance in light of the factors enumerated in section 510(a-5), including the proceeds Michael received from the reverse stock split.

III

Molly also argues that the trial court erred in altering the percentage of responsibility for the children's uncovered medical expenses from 60%/40% to 50%/50%.

Initially, Molly claims that the court's modification was erroneous because the percentage was a "bargained for" provision of the settlement agreement that was nonmodifiable. We disagree.

Sections 510(a)(1) and 510(a-5) of the Dissolution Act provide that orders for the payment of child support may be modified by a trial court. 750 ILCS 5/510(a)(1), 510(a-5) (West 2008). Health care coverage is a form of child support that may be modified under these provisions. 750 ILCS 5/505.2(b)(1) (West 2008); In re Marriage of Turrell, 335 Ill. App. 3d 297 (2002). It is well established that the trial court has the authority to modify a child support provision in a dissolution judgment that was entered in accordance with a settlement agreement. Blisset v. Blisset, 123 Ill. 2d 161 (1988). "[T]he statutory power of a court to reduce the amount of *** child support is not defeated by the fixing of the amount of the payments in a settlement agreement which was

17

incorporated in the decree." <u>Lamp v. Lamp</u>, 81 Ill. 2d 364, 370 (1980). Thus, the medical expense provision of the parties' settlement agreement was modifiable.

Alternatively, Molly argues that the percentage modification was inappropriate because Michael failed to show a substantial change in circumstances.

Modifications to the provisions of the agreement pertaining to the payment of medical expenses are governed by section 510(a) of the Dissolution Act. 750 ILCS 5/510(a) (West 2008); <u>Turrell</u>, 335 Ill. App. 3d at 310. That section provides that the provision of any judgment involving maintenance or support may be modified upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a) (West 2008). An economic change resulting from an investment may constitute a material change in circumstances sufficient to modify child support. <u>In re Marriage of Hardy</u>, 191 Ill. App. 3d 685 (1989). The determination that there has been a substantial change in circumstances to warrant the modification lies within the trial court's discretion and will not be disturbed absent an abuse of discretion. <u>Turrell</u>, 335 Ill. App. 3d at 307. An abuse of discretion occurs when no reasonable person would agree with the decision. <u>In re Marriage of Mitteer</u>, 241 Ill. App. 3d 217 (1993).

The record establishes that as a consequence of Michael's loss of his AEC stock, he will no longer receive the significant

18

dividends and pass-through income that have been distributed to him. Michael's 2008 financial affidavit indicated that he received $1,940.50 per month from stock dividends. The company paid Michael $192,780 to buy back the shares he owned in the reverse stock split. Although these proceeds could be used to purchase other income producing stocks, the income generated by the new investments may not result in the significant dividend payments Michael previously received. Moreover, Michael's percentage of responsibility was not dramatically reduced or terminated; he is still responsible for 50% of the children's uncovered health expenses. In light of these circumstances, we cannot say that no reasonable person would agree with the court's decision. The trial court did not abuse its discretion by equally apportioning the children's uncovered medical expenses between the parties.

IV

Molly also claims that the trial court erred in determining that Michael was not obligated to return the children's personal property.

The disposition of property rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. See In re Marriage of Scafuri, 203 Ill. App. 3d 385 (1990).

In her motion for return of property, Molly sought an order from the court directing Michael to return certain personal

19

property to the children. At the hearings, Michael testified that all of the personal items in Molly's motion were given to the girls by him or his parents. He further testified that the girls only used them when they stayed at his house. Since the girls had not stayed with him for more than three years, Michael donated the items to Goodwill. It was therefore impossible for Michael to return the personal property. Given these facts, we find no error in the trial court's order denying Molly's request.

V

Next, Molly contends that the trial court abused its discretion in awarding $25,000 in attorney fees under sections 508(a) and 508(b) of the Dissolution Act.

Attorney fees are primarily the responsibility of the party for whom the services are rendered. In re Marriage of Walters, 238 Ill. App. 3d 1086 (1992). Section 508(a) allows the court, after considering the financial resources of the parties, to order a spouse to pay the fees necessarily incurred by the other party. 750 ILCS 5/508(a) (West 2008). The party seeking an award under section 508(a) must show an inability to pay and an ability to pay by the other spouse. Walters, 238 Ill. App. 3d at 1100.

In March 2009, Molly petitioned the court for the attorney fees she incurred after the trial court's December 28, 2006, order. Her interim petition sought fees for numerous petitions for rules to show cause as well as her response to Michael's motion to

20

terminate maintenance. In support, Molly included affidavits from four attorneys. Attorney Richard Zuckerman submitted affidavits for fees showing that he expended 14.8 hours for work he performed on various petitions for rules to show cause and 70.8 hours in pursuit of issues of child support and maintenance. Attorney Jeffery Rock filed an affidavit demonstrating that Molly's attorney fees with his firm for the months of May and June of 2008 equaled $3,784.68. Attorney Judith Seritella's affidavit indicated that Molly incurred $4,935 in legal fees in the fall of 2008. Finally, Attorney Steven Wakeman submitted affidavits, totaling more than $42,886 in fees.

In considering Molly's request, the trial court reviewed the financial affidavits of assets and expenses submitted by both parties. Molly's affidavit demonstrated that she had substantial nonmarital assets, owned the marital home and had no marital debt. In light of the parties' financial resources, the trial court did not abuse its discretion in balancing their attorney fees and determining that Michael had the ability to pay $25,000 of Molly's fees under section 508(a).

Nevertheless, Molly argues that the trial court should have awarded additional attorney fees under section 508(b).

Section 508(b) of the Dissolution Act provides:

"In every proceeding for the enforcement of an order or judgment when the court finds that the failure to comply

21

with the order or judgment was without compelling cause or justification, the court shall order the party against whom the proceeding is brought to pay promptly the costs and reasonable attorney's fees of the prevailing party."

750 ILCS 5/508(b) (West 2008).

Section 508(b) is mandatory, not discretionary, and does not allow for the court to exercise its discretion as to payment if the defaulting party's conduct was without cause or justification. 750 ILCS 5/508(b) (West 2008); Walters, 238 Ill. App. 3d at 1098. An award under section 508(b) does not depend on a party's inability to pay the fee or the other party's ability to pay. Walters, 238 Ill. App. 3d at 1098. However, the fee awarded is subject to a determination of reasonableness based on factors such as time spent, the ability of the attorney, and the complexity of the work. See Richardson v. Haddon, 375 Ill. App. 3d 312 (2007). "[W]here the allowance of attorney's fees is contested and a hearing is requested, the trial court should conduct a hearing on the question." Scott v. Scott, 72 Ill. App. 3d 117 (1979).

Without conducting a separate hearing, the trial court found the attorney fees reasonable but awarded Molly an arbitrary sum of $25,000. However, pursuant to section 508(b), Molly was entitled to fees for the amount spent in securing child support back payments, seeking income reporting information, forcing proper income tax return reporting, and seeking the disclosure of various

22

assets.  Under section 508(b), a hearing should have been conducted to determine the amount of fees she incurred in pursuing petitions to enforce court orders.  See In re Marriage of Eberhardt, 387 Ill. App. 3d 226 (2008) (separate hearing required to determine fees under section 508(b)).  We therefore reverse the trial court's award of attorney fees and remand for a hearing on this issue.

VI

Molly further claims that the trial court improperly resolved Michael's failure to file amended tax returns for the 2005 through 2008 tax years.

According to the terms of the parties' settlement agreement, Michael was allowed to claim Kaleigh as a dependent provided he paid child support as ordered.  Michael subsequently claimed Kaleigh as a dependent but failed to meet his support obligation. As a result, the trial court ordered Michael to file amended returns for 2005 through 2008, the years in which he violated the judgment.  In its final order, the trial court found that Michael failed to file the amended income tax returns, but relieved him of the requirement to do so, noting that amended returns may subject the parties to an audit and would not be "in anyone's best interests."  To remedy the disadvantage to Molly, the trial court allowed her to claim both children as dependents on her income tax return until the children turned 18 or completed high school.

Under these circumstances, the trial court's decision is an

23

abuse of discretion.  Michael was ordered to pay child support before claiming an exemption, found in contempt for failing to follow that agreement, ordered to file amended returns to remedy the situation, and failed to comply with that order as well.  That a party has failed to comply with a divorce decree constitutes prima facie evidence of contempt and the burden then shifts to the contemner to show that the conduct objected to was not willfully committed.  See Palacio v. Palacio, 33 Ill. App. 3d 1074 (1975).  Here, the trial court found Michael's conduct willful.  The trial court abused its discretion when it relieved him of the duty to amend his tax returns and to simply switch the years of allowed exemptions based on mere convenience.  Moreover, the trial court's alternative remedy fails to account for any tax advantage Michael previously received, the future fluctuation in the parties' income, or Molly's ability to claim both girls as dependents for all four subsequent tax years.  We therefore vacate that portion of the trial court's order allowing Molly to claim both children as dependents on her income tax returns for the next four years.  We remand to the trial court to direct Michael to file his amended tax returns as previously ordered.[2]

---

[2] If, on remand, Molly's loss on her tax returns for 2005 through 2008 can be determined, the court may simply award her a lump sum payment for that amount without requiring Michael to file amended tax returns.

24

VII

Last, Molly maintains that the trial court erred in modifying the full income reporting requirements previously imposed on Michael.

The dissolution of marriage is entirely statutory in origin and nature, and courts in dissolution cases must exercise their powers within the limits of the Dissolution Act. In re Marriage of Rhodes, 326 Ill. App. 3d 386 (2001). Section 510(a) of the Act provides in relevant part that the provisions of any judgment respecting maintenance or support may be modified only upon a showing of a substantial change in circumstances. 750 ILCS 5/510(a) (West 2008). The determination of the equities of discharge of obligations will not be reversed on appeal absent an abuse of discretion. Hardy, 191 Ill. App. 3d 691-92.

Under the dissolution judgment in this case, Michael was ordered to provide Molly with annual copies of his income tax returns, including all supporting schedules, W-2 forms and 1099 forms. Although neither party requested a change in Michael's reporting requirements, the trial court modified Michael's obligation in the final supplemental judgment to allow him to only provide a copy of his W-2 form from his employer.

We can find no substantial change in circumstances that permit this modification of the prior order. The record indicates that Michael owned various stocks and other assets and that he had

25

previously failed to disclose certain brokerage accounts and trust property. By allowing Michael to provide only his W-2 forms, the trial court stripped Molly of any ability to review other sources of income Michael might receive for support purposes. We find that the trial court's decision to reduce Michael income reporting obligation was an abuse of discretion. We vacate the modification and remand the matter to the trial court to reinstate the prior reporting requirements. On remand, the court shall direct Michael to provide Molly with copies of his income tax returns and all supporting schedules, W-2 forms and 1099 forms, from the date of his last full annual report under the previous order.

[The preceding material is not to be published pursuant to Supreme Court Rule 23. 166 Ill. 2d R. 23.]

CONCLUSION

For the foregoing reasons, we affirm and remand for modification of the May 27, 2009, support order regarding any gifts and bonuses Michael receives, retroactive to the date of the order. For the remaining unpublished issues, we remand for reconsideration of Michael's request to modify maintenance in light of the stock proceeds. We reverse the award of attorney fees and remand for a separate hearing to determine the amount of fees related to the petitions for rules to show cause. We vacate that part of the court's order that relieved Michael of his duty to file amended tax returns for the years 2005 through 2008 and remand with further

26

instruction. We also vacate that portion of the trial court's order modifying Michael's income reporting obligation and reinstate the previous reporting requirements. We otherwise affirm the trial court's order resolving the remaining issues in the dissolution proceeding. See <u>Walters</u>, 238 Ill. App. 3d 1086.

Affirmed in part; remanded in part; reversed and remanded in part; and vacated and remanded in part.

CARTER, J., concurs.

JUSTICE McDADE, concurring in part, dissenting in part:

I am in general agreement with the majority's analysis and conclusions regarding each of the issues on review save one. For the reasons that follow, I believe the trial court erred in concluding that the proceeds of the sale of Michael's AEC stock did not constitute income, and further believe that those proceeds should be considered in the recalculations of child support and maintenance on remand. I would reverse the trial court's order on that issue and, therefore, respectfully dissent from the majority's contrary decision.

Molly argues first that the trial court erred in treating the sale as an exchange of one form of property for another form of property. Instead she contends the funds are income for child support purposes because income includes "a valuable benefit *** that enhance[]s wealth and facilitate[]s ability to support." *In re Marriage of Rogers*, 213 Ill. 2d 129, 137, 820 N.E.2d 386, 390 (2004). Molly concedes that the stock itself was an "intangible" and "non-spendable" "non-producing asset." However, once Michael sold it, he acquired "something [he] could spend as he saw fit." Molly asks this court to order him to pay 28% of those funds as child support. Second, Molly asserts that under section 510(8) of the Dissolution Act the income from the sale of the stock is property that trial court

27

should have considered in determining Michael's maintenance obligation.

Michael responds *Rogers* is distinguishable because the sale of his stock was not a "gift" and the proceeds of the sale are not income because "[t]he cash proceeds from the stock purchase *** took the place of the former shares of stock, as another form of property." Michael notes the property in its former form (shares of stock) was non-marital property, and he relies on *In re Marriage of O'Daniel*, 382 Ill. App. 3d 845, 850, 889 N.E.2d 254, 258 (2008), for the proposition that because the "property" already belonged to him as non-marital property the change in form of the property from stock to cash does not make the cash "income."

In *O'Daniel*, the question was whether an IRA distribution constituted income. The court held that:

> "[w]hen an individual withdraws money he placed into an IRA, he does not gain anything as the money was already his. Therefore, it is not a gain and not income. The only portion of the IRA that would constitute a gain for the individual would be the interest and/or appreciation earnings from the IRA." *O'Daniel*, 382 Ill. App. 3d at 850, 889 N.E.2d at 258.

I find Michael's argument to be unpersuasive. As his non-marital property, the stock represented an investment. Thus, *O'Daniel* actually supports Molly's position that Michael's earnings from the investment constitute income. *O'Daniel* holds that any appreciation in value of the stock "would constitute a gain." Michael notes he suffered a capital loss from the transaction. Under *O'Daniel*, the amount of the capital loss goes to the question of whether, as a result of the transaction, his wealth was enhanced, and may reduce the amount of real income generated from the proceeds of the sale. However, a capital loss would not change the nature of the earnings generated by the asset, which in this case constitutes cash proceeds of sale, from income to property. See also *In re Marriage of Colangelo and Sebela*, 355 Ill. App. 3d 383, 392, 822 N.E.2d 571, 578 (2005)

28

("even though the unrealized stock options were allocated to the parties as marital property, the realized stock distribution met the definition of 'income' for purposes of determining child support").

Michael also notes that the company required him to cash out his shares as a result of its decision to institute a reverse stock split. While the fact that Michael did not choose to sell his asset but was forced to sell is relevant to the question of his good faith in the transaction, it is irrelevant to the question of whether the transaction generated spendable earnings that enhanced his wealth.

Michael contends that "[t]he concept of property is distinct from income; otherwise, all property transactions, which naturally result in another form of property, would be considered income." However, if cash proceeds are held to be just another form of property, then no sale of a capital asset would ever generate income. As our supreme court has noted:

> "As the word itself suggests, 'income' is simply 'something that comes in as an increment or addition ***: a gain or recurrent benefit that is usu[ally] measured in money ***: the value of goods and services received by an individual in a given period of time.' Webster's Third New International Dictionary 1143 (1986). It has likewise been defined as '*[t]he money or other form of payment that one receives*, usu[ally] periodically, from *** *investments*, royalties, gifts and the like.' Black's Law Dictionary 778 (8th ed.2004)." (Emphases added.) *Rogers*, 213 Ill. 2d at 136-137, 820 N.E.2d at 390.

I believe this court should hold that the proceeds of Michael's stock sale constitute income.