(No. 97833.—

*In re* MARRIAGE OF JOAN ROGERS, Appellee, and MARK ROGERS, Appellant.

*Opinion filed November 18, 2004.*

Paul J. Bargiel, of Chicago, for appellant.

No appearance for appellee.

Lisa Madigan, Attorney General, of Springfield (Gary Feinerman, Solicitor General, and Diane M. Potts, Assistant Attorney General, of Chicago, of counsel), for *amicus curiae* Illinois Department of Public Aid.

JUSTICE RARICK delivered the opinion of the court:

The issue in this case is whether cash gifts and "loans" received by a father from his family qualify as income under section 505 of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/505 (West 2002)) for purposes of calculating the father's statutory child support obligations. The circuit court of Cook County held that they do. It therefore took those gifts and "loans" into account when it granted the mother's request for modification of the court's judgment regarding child support. The appellate court affirmed. 345 Ill. App. 3d 77. We granted the father's petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons that follow, we now affirm.

Mark Rogers, the father, married Joan Rogers, the mother, on August 11, 1984. The couple had one child, named Dylan, born October 2, 1985. Shortly after Dylan's third birthday, the mother petitioned to have the marriage dissolved. Judgment granting dissolution was eventually entered February 21, 1991. The judgment incorporated a marital settlement agreement under which Dylan was to reside with his mother, and the father was obligated to pay $250 per month in child support.

According to the record before us, nothing of consequence occurred in the case for the next 5¹/₂ years. Beginning in December of 1996, however, the parties began to battle over various issues related to Dylan's custody and care. The parties' disagreements culminated in a new custody and visitation order filed February 23, 2001. That order provided, among other things, that the father and mother were to have joint physical and legal custody of

Dylan and that the father was no longer responsible for paying child support to the mother.

Less than six months later, the father filed an emergency petition to terminate that order. A few months after that, an emergency petition to terminate the order was also filed by the mother. While those matters were pending, the court granted the mother temporary custody of Dylan and ordered the father to resume paying her $250 per month in child support, effective November 13, 2001. When the father failed to comply, the mother moved for a rule to show cause why he should not be held in contempt of court. The court subsequently issued an order granting sole custody of Dylan to the mother and again ordering the father to pay her $250 per month in child support. The court also ordered the father to pay the mother $375 in child support he still owed under the court's previous order.

Within months of the foregoing order, the mother was forced to return to court to compel the father to comply with the order's provisions. She also filed an emergency petition for immediate modification of the order's support provisions. The modification request was brought pursuant to section 510 of the Act (750 ILCS 5/510 (West 2002)). It alleged that ongoing misdeeds by the father, including neglect and abuse of Dylan and the father's persistent failure to meet his financial obligations toward the child, had imperiled the ability of the mother to meet Dylan's basic needs and had required her to incur additional medical, educational and therapeutic expenses for the child's treatment and care.

The father moved to dismiss the petition for modification. Following an evidentiary hearing at which the mother and father both testified, the circuit court denied the father's motion to dismiss and granted the mother's petition for modification. The circuit court's modification order, filed July 29, 2002, held that the mother's

testimony was credible and the father's was not. Based on the evidence before it, the court determined that the father should pay 75% of Dylan's school tuition, books, fees and related expenses and 100% of the therapy costs sustained by Dylan that were not covered by insurance. The court further held that the father's child support payments should increase. The increase was based on section 505 of the Act (750 ILCS 5/505 (West 2002)). Section 505 sets forth guidelines courts are to use in determining the minimum amount of child support a parent is required to pay. Where one child is involved, as is the case here, the guidelines set the amount of support at 20% of the supporting party's "net income." 750 ILCS 5/505(a)(1) (West 2002).

"Net income" is defined by the Act as "the total of all income from all sources," minus deductions for state and federal income tax, social security (FICA payments), mandatory retirement contributions, union dues, dependent and individual health/hospitalization insurance premiums, prior obligations of support or maintenance actually paid pursuant to court order, and expenditures for repayment of debts incurred for certain purposes. 750 ILCS 5/505(a)(3) (West 2002). In computing the father's "net income" here, the circuit court determined that the father earns $15,000 per year from a teaching job at the Chicago School of Professional Psychology and receives an additional $46,000 per year in gifts and loans from his parents. The court further concluded that the father has little if any tax liability on his income. Based on these factors, the court held that the father's child support obligations should be increased from $250 per month to $1,000 per month effective August 1, 2002, and continuing until June of 2004.

The father did not comply with the circuit court's order. Instead, he moved for reconsideration. As grounds for his motion, the father argued that the increase in

child support was erroneous because it did not comport with the provisions of section 505 of the Act. According to the father, the circuit court improperly deviated from the provisions of the statute by considering the $46,000 in gifts and loans paid to the father each year by his family. In the father's view, those annual gifts and loans do not qualify as "net income" and therefore should not have been taken into account by the circuit court in making its calculations under the statute. The father contended that the only income of his that should have been considered by the court was the $15,000 he earned from his teaching job. Even with respect to that, however, the father argued that the court's computation was erroneous because it did not credit him for payments he will be required to make for state and federal income tax and for FICA payments.[1]

In response to the father's arguments, the mother noted that by the father's own testimony, the gifts and loans from his family "represent a steady source of dependable annual income *** he has received each year over the course of his adult life." He has never had to repay any portion of those sums, nor has he been required to pay tax on them. The father likewise has little, if any, tax liability on the sums he earns from teaching. Accordingly, the mother argued, all of the $61,000 the father receives each year was properly considered by the court in applying the guidelines set forth in section 505 of the Act. The father therefore cannot complain that the trial court did not correctly follow the applicable law.

---

[1]The father also asserted that requiring him to pay 75% of Dylan's educational expenses and 100% of the cost of therapy not covered by insurance in addition to the increased child support placed more of a burden on him than was fair. This argument was vigorously challenged by the mother in the trial court and has not been pursued by the father on appeal.

By order filed November 27, 2002, the circuit court denied the father's motion to reconsider, noting that it "agree[d] with the statements made in Mrs. Rogers' response." The father appealed. As grounds for his appeal, the father argued, as he had in the circuit court, that the $46,000 in gifts and loans he received each year from his family should not have been included as part of his "net income" for purposes of calculating his child support obligations under section 505 of the Act. No other issues were raised. As noted at the outset of this opinion, the appellate court rejected the father's argument. It therefore affirmed.

We allowed the father's petition for leave to appeal. The father elected to have his petition for leave to appeal stand as his brief. 177 Ill. 2d R. 315(g). Although no appellee's brief has been filed by the mother, the record is simple and the issue raised is such that we can easily decide it without the aid of an appellee's brief. *People v. Johnson*, 197 Ill. 2d 478, 481 (2001). In addition, our understanding of the dispute has been assisted by the Illinois Department of Public Aid, which was granted leave to submit an *amicus curiae* brief in support of the wife's position. We shall therefore proceed to decide the case on its merits.

The appeal before us arises from an order of the circuit court granting the wife's motion to modify child support payments. Generally speaking, the modification of child support payments lies within the sound discretion of the trial court, and a trial court's modification order will not be disturbed on appeal, absent an abuse of discretion. *In re Marriage of Bussey*, 108 Ill. 2d 286, 296 (1985). In this case, however, the only aspect of the circuit court's decision challenged by the father is its interpretation of "net income" under section 505 of the Act to include gifts and loans received by the father from his family. How a statute is interpreted is not a matter left

to the trial court's discretion. It presents a question of law, which we review *de novo*. *Lee v. John Deere Insurance Co.*, 208 Ill. 2d 38, 43 (2003).

The principles governing our review are well established. The fundamental rule of statutory interpretation is to give effect to the intention of the legislature. The best indicator of the legislature's intent is the plain language of the statute. When the statutory language is clear, it must be given effect without resort to other tools of interpretation. *Metzger v. DaRosa*, 209 Ill. 2d 30, 35 (2004).

For purposes of determining statutory child support obligations, the General Assembly has adopted an expansive definition of what constitutes "net income." "Net income" is defined broadly to encompass "the total of all income from all sources," minus deductions for state and federal income tax, social security (FICA payments), mandatory retirement contributions, union dues, dependent and individual health/hospitalization insurance premiums, prior obligations of support or maintenance actually paid pursuant to court order, and expenditures for repayment of debts incurred for certain purposes. 750 ILCS 5/505(a)(3) (West 2002).

Under the foregoing definition, the first step in calculating a parent's "net income" is ascertaining "the total of all income from all sources" received by that parent. That determination, in turn, depends on what items may properly be considered "income." "Income" is not separately defined in section 505 of the Act. We will therefore give it its plain and ordinary meaning. *In re Estate of Poole*, 207 Ill. 2d 393, 406 (2003).

As the word itself suggests, "income" is simply "something that comes in as an increment or addition ***: a gain or recurrent benefit that is usu[ally] measured in money ***: the value of goods and services received by an individual in a given period of time." Webster's Third

New International Dictionary 1143 (1986). It has likewise been defined as "[t]he money or other form of payment that one receives, usu[ally] periodically, from employment, business, investments, royalties, gifts and the like." Black's Law Dictionary 778 (8th ed. 2004).

Under these definitions, a variety of payments will qualify as "income" for purposes of section 505(a)(3) of the Act that would not be taxable as income under the Internal Revenue Code. As our appellate court has recognized, however, the Internal Revenue Code is designed to achieve different purposes than our state's child support provisions. See *In re Marriage of McGowan*, 265 Ill. App. 3d 976, 979 (1994). Accordingly, it does not govern the determination of what constitutes "income" under the statutory child support guidelines enacted by the General Assembly. *In re Marriage of Sweet*, 316 Ill. App. 3d 101, 109 (2000); *In re Marriage of Boland*, 308 Ill. App. 3d 1063, 1067 (1999); *In re Marriage of Pylawka*, 277 Ill. App. 3d 728, 732 (1996).

Based on the foregoing principles, we conclude, as the appellate court did, that the circuit court was correct to include as part of the father's "income" the annual gifts he received from his parents. That the gifts may not have been subject to taxation by the federal government is of no consequence. They represented a valuable benefit to the father that enhanced his wealth and facilitated his ability to support Dylan. They therefore qualify as "income" and were properly considered by the circuit court in computing the father's "net income" under section 505(a)(3) of the Act.

In urging us to reach a contrary conclusion, the father cites two appellate court opinions, *In re Marriage of Bowlby*, 338 Ill. App. 3d 720, 729-30 (2003), and *In re Marriage of Harmon*, 210 Ill. App. 3d 92, 95 (1991). Those cases did both hold that money received as gifts

was properly excluded from consideration as income for purposes of calculating child support. In our view, however, the rationale underlying those decisions is unpersuasive. The court in *In re Marriage of Harmon* refused to consider gifts when determining "net income" on the grounds that the petitioner had not cited authority that would permit it to do so. *In re Marriage of Harmon*, 210 Ill. App. 3d at 95. As we have just discussed, however, inclusion of gifts as "income" is proper under the plain and ordinary language of section 505(a)(3) itself. No further authority is necessary. Where, as here, the language of a statute is plain and unambiguous, the circuit courts need not await interpretation by a court of review before giving the statute effect.

Later in its opinion, the court in *In re Marriage of Harmon* attempted to buttress its position using the theory that there was no guarantee that the respondent, who received $10,000 per year from her mother, would continue to receive such gifts in the future. Although it was possible that the payments would go on, the court reasoned that "[t]he possibility of future financial resources *** should not be considered when setting an award of child support."

This rationale is also untenable. Few, if any, sources of income are certain to continue unchanged year in and year out. People can lose their jobs, interest rates can fall, business conditions can wipe out profits and dividends. Accordingly, the relevant focus under section 505 is the parent's economic situation at the time the child support calculations are made by the court. If a parent has received payments that would otherwise qualify as "income" under the statute, nothing in the law permits those payments to be excluded from consideration merely because like payments might not be forthcoming in the future. As our appellate court has held, "the Act does not provide for a deduction of

nonrecurring income in calculating net income for purposes of child support." *In re Marriage of Hart*, 194 Ill. App. 3d 839, 850 (1990).

Having said that, we hasten to add that the nonrecurring nature of an income stream is not irrelevant. Recurring or not, the income must be included by the circuit court in the first instance when it computes a parent's "net income" and applies the statutory guidelines for determining the minimum amount of support due under section 505(a)(1) of the Act. If, however, the evidence shows that a parent is unlikely to continue receiving certain payments in the future, the circuit court may consider that fact when determining, under section 505(a)(2) of the Act (750 ILCS 5/505(a)(2) (West 2002)), whether, and to what extent, deviation from the statutory support guidelines is warranted. Moreover, if the payments should stop earlier than anticipated by the court, the parent obligated to provide support based on those payments may seek modification of the support order pursuant to section 510 of the Act (750 ILCS 5/510 (West 2002)).

*In re Marriage of Bowlby*, the other case upon which the father relies, offers no additional justification for excluding gifts from "income" when calculating child support under section 505(a) of the Act. It merely cites *In re Marriage of Harmon*. We therefore reject it as well. To the extent that *In re Marriage of Bowlby* and *In re Marriage of Harmon* are inconsistent with the views expressed in this opinion, they are both hereby overruled.

This leaves only the matter of the annual "loans" given to the father by his parents. For purposes of determining a parent's net income, section 505 of the Act authorizes the deduction of amounts expended in repayment of certain types of debts. There is no corresponding provision authorizing the exclusion of loan proceeds. Ac-

cordingly, the appellate court reasoned that under the language of the Act, the circuit court acted correctly when it included the money the father's parents loaned him when it calculated his support obligations. 345 Ill. App. 3d at 80-81.

Although the father challenges the appellate court's construction of the statute, we have no occasion in this case to address whether and under what circumstances loan proceeds are properly regarded as an element of income for child support purposes. The reason for that is that the sums at issue here are loans in name only. According to the mother, whose testimony was found to be more credible by the circuit court, the father had never been required to repay any part of the substantial "loans" given to him each year by his parents. She stated that by the father's own testimony, those sums "represent a steady source of dependable annual income *** he has received each year over the course of his adult life."[2] That being so, the money the father received from his parents was no less "income" than the gifts they gave him or the salary he received from his teaching job. The appellate court therefore acted properly when it upheld the circuit court's determination that the proceeds should be considered in determining the father's "net income" under section 505(a)(3) of the Act.

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

---

[2]Although no report of proceedings was prepared or filed in this case, the father does not contest the sufficiency of the evidence supporting the trial court's judgment. We note, moreover, that if additional facts existed to support the father's position, it was his obligation, as the appellant, to make them known to the reviewing courts. Any doubts arising from the incompleteness of the record must be resolved against him. *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392 (1984).