# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *In re Marriage of Mayfield*, 2013 IL 114655

---

| | |
|---|---|
| Caption in Supreme Court: | *In re* MARRIAGE OF SHANNON MAYFIELD, Appellee, v. HOWARD R. MAYFIELD, Appellant. |
| Docket No. | 114655 |
| Filed | May 23, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | An ex-husband who took his workers' compensation award as a lump sum rather than as monthly payments based on his life expectancy could not successfully argue that his obligation to pay 20% of net income as child support should be calculated on the latter rather than the former where he neither requested a deviation from statutory guidelines nor presented sufficient evidence therefor—child support award of 20% of lump sum upheld. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Woodford County, the Hon. John B. Huschen, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Burt L. Dancey, of Elliff, Dancey & Bosich, P.C., of Pekin, appellant.

David M. Lynch, of Lynch and Bloom, P.C., of Peoria, for appellee.

Lisa Madigan, Attorney General, of Springfield (Michael A. Scodro, Solicitor General, and Diane Potts, Assistant Attorney General, of Chicago, of counsel), for *amicus curiae* Illinois Department of Healthcare and Family Services.

Justices

JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Kilbride and Justices Freeman, Thomas, Garman, Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     Howard Mayfield appeals the decision of the appellate court, which affirmed the decision of the circuit court of Woodford County to award his ex-wife, Shannon Dykes, 20% of a lump-sum workers' compensation settlement as child support. For the reasons that follow, we affirm.

¶ 2                                         BACKGROUND

¶ 3     In 1995, Mayfield and Dykes married. They had two children: Zachary and Jessica. In 2003, Mayfield and Dykes divorced. Because Dykes was the custodial parent, the trial court ordered Mayfield to pay $158.50 per week in child support.

¶ 4     In 2004, Mayfield filed a petition to modify child support, asserting that he had been laid off and would apply for unemployment benefits. Dykes responded with a petition for rule to show cause, asserting that Mayfield was in arrears on child support. The trial court denied Mayfield's petition to modify, and granted Dykes' petition for rule to show cause. The trial court found that Mayfield was in arrears by $1,580 and ordered him to pay an additional $32 per week in child support.

¶ 5     In 2009, Mayfield filed another petition to modify child support because Zachary began living with him. To reflect the new living arrangements, and the parties' respective child support obligations, the trial court ordered Mayfield to pay $37.57 per week in child support.

¶ 6     In 2011, Dykes filed a petition to modify child support because Zachary had reached the

-2-

age of majority, ending her child support obligation to him. At a hearing on that petition,[1] Mayfield testified that, in 2007, he suffered a workplace injury and, in 2010, he received a lump-sum workers' compensation settlement of $300,000, which was reduced to $239,920 after deducting attorney fees and medical expenses. Under section 10.1 of the Workers' Compensation Act, the settlement agreement prorated the lump sum over Mayfield's life expectancy. See 820 ILCS 305/10.1 (West 2010). The settlement agreement stated, "It is the parties['] intent and agreement that this shall constitute the equivalent of monthly payments for the duration of [Mayfield's] life expectancy of 34 years which comes out to $580.30 per month." The agreement further stated that Mayfield's average weekly income before the injury was $969.60, and that he was seeking employment that could accommodate his medical restrictions.

¶ 7        Apparently, Mayfield did not testify about the injury or his restrictions, but he did testify that he spent most of the settlement by paying off his home mortgage and a $9,000 loan, buying hunting property for $44,000 and a motorcycle for $10,000, taking a $5,000 Florida vacation, and extensively remodeling his home. Mayfield's financial affidavit showed that he owned three cars free of liens; a money market account with $31,204.36; $20,000 of furniture and appliances in his home; and $3,000 of jewelry and furs. Mayfield admitted that he did not notify Dykes of his workers' compensation claim or his settlement.

¶ 8        Dykes testified that Jessica was 14 years old and needed support, but that Zachary had reached the age of majority. Dykes further testified that after Mayfield's injury, he was unemployed, which caused a significant reduction in child support.

¶ 9        Pursuant to a request, Dykes' attorney mailed to the trial court copies of, *inter alia*, *In re Marriage of Dodds*, 222 Ill. App. 3d 99 (1991), and *In re Marriage of Schacht*, 343 Ill. App. 3d 348 (2003), which held that lump-sum workers' compensation settlements were income for purposes of the Illinois Marriage and Dissolution of Marriage Act's child support provisions. Mayfield then filed a memorandum in opposition to Dykes' petition to modify. In that memorandum, Mayfield attempted to distinguish those cases because the issues there did not involve apportionment of a workers' compensation settlement. Mayfield argued:

> "Where the child is a teenager, and where clearly the award is to compensate for limited monthly payments over the life expectancy of the workman's compensation petitioner, it would be manifestly unfair to award a 20% portion of the entire settlement, to the former spouse. Such an award would grant the former spouse child support, in this case, effectively, for 25 years after the child has reached her majority."

Mayfield asked the trial court to order child support from the settlement "based upon the weekly amount upon which it was calculated." According to Mayfield, his child support should be $116.06 per month, or 20% of the prorated monthly amount of the settlement, retroactive to the date of the settlement.

¶ 10       The trial court granted Dykes' motion. The court's short written order provided:

---

[1]Mayfield has not submitted a transcript of this hearing, but instead a bystander's report, summarizing the parties' testimony.

"The Court has reviewed the authorities provided. This Court is compelled to follow [*Dodds*]. [*Dodds*] found workers compensation awards to be income and approved a percentage distribution of the total lump sum payment for child support. [Mayfield] is correct in pointing out that the lump sum payment he received represented his wage differential basis over his 34 year life expectancy. However 820 ILCS 305/9 provides that workers may elect to receive the compensation due them resulting from work injury in a lump sum payment. The compensation however is an amount which will equal the total sum of the probable future payments capitalized at their present value. If [Mayfield] desired to pay his child support in weekly or monthly payments, he could have ignored the election and taken his compensation over his life expectancy."

The trial court ordered Mayfield to pay $47,984, or 20% of the entire settlement, within 30 days.[2]

¶ 11    Mayfield filed a motion to reconsider. He again argued that *Dodds* was inapposite because it only addressed whether a lump-sum workers' compensation settlement was income, not how it should be allocated. According to Mayfield, the latter issue was one of first impression, and the trial court was not bound by *Dodds*. Instead, the court was free to determine a "fair and equitable" amount of child support, considering "the nature of the award, the child's age, and the circumstances of the case," including the fact that the settlement stated a prorated monthly amount. Thus, Mayfield contended, the court had "clear evidence as to what his monthly income was calculated at, for purposes of the settlement. The fact that he chose to take it as a lump sum does not alter or undermine the nature of the compensation." The trial court denied Mayfield's motion, and he appealed.

¶ 12    The appellate court affirmed. 2012 IL App (4th) 110737-U. The appellate court initially noted that its standard of review was *de novo*, because Mayfield challenged the trial court's interpretation of section 505(a) of the Dissolution Act. *Id.* ¶ 17. However, the appellate court further noted that Mayfield conceded "workers' compensation awards should be treated as income for purposes of child support" under *Dodds*. *Id.* ¶ 22. The court still analyzed that issue:

"As workers' compensation payments are intended to replace lost wages, it is only logical that [they are] a type of 'income' under the Act. These payments consist of a financial benefit received by the obligor parent that has a positive impact on the parent's ability to support his children. Including workers' compensation as income is consistent with the policy of including all income from all sources as it improves a parent's economic situation at the time of the payment. Therefore, we agree that workers' compensation payments are included in the statutory definition of 'net income.' " *Id.* ¶ 28.

¶ 13    The appellate court then turned to the issue of apportionment. Mayfield contended that the trial court erred in ordering him to pay 20% of the total settlement because that would

_____

[2]The court also ordered him to pay child support of $197.20 per month based on his income from a pension disability fund.

constitute child support beyond Jessica's majority, and the settlement was intended to replace lost wages over his life expectancy. *Id.*¶ 31. The appellate court rejected this argument, concluding that the lump-sum workers' compensation settlement constituted current income: "[H]ad a lump sum like the award in this case been realized through employment or investment, it would be ordinary income for purposes of determining child support." *Id.* ¶ 32. According to the appellate court, this approach is consistent with *Dodds*. *Id.* The appellate court noted that trial courts always possess the authority to deviate from the statutory guidelines when appropriate, provided they explain their reasoning. *Id.* ¶ 33.

¶ 14    This court allowed Mayfield's petition for leave to appeal. Ill. S. Ct. R. 315(a) (eff. Feb. 26, 2010). This court also allowed the Illinois Department of Healthcare and Family Services to file an *amicus curiae* brief in support of Dykes. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 15                                    ANALYSIS

¶ 16    Under section 505(a) of the Dissolution Act, a trial court has the authority to order either or both parents to pay "an amount reasonable and necessary for [the] support" of the child. 750 ILCS 5/505(a) (West 2010). Calculating this amount is a two-step process. The trial court must determine the parties' income, then apportion that income, setting an amount of child support for the noncustodial parent. See *In re Marriage of McGrath*, 2012 IL 112792, ¶ 13. Section 505(a)(3) of the Dissolution Act governs the first step. It provides a definition of net income, which is the "total of all income from all sources," minus various deductions. 750 ILCS 5/505(a)(3) (West 2010). In *In re Marriage of Rogers*, 213 Ill. 2d 129, 136-37 (2004), we noted that that definition is broad, and that "income" includes gains and benefits that enhance a noncustodial parent's wealth and facilitate that parent's ability to support a child or children. *Id.* at 137. Such gains and benefits are normally linked to employment or self-employment, investments, royalties, and gifts. *Id.* (quoting Black's Law Dictionary 778 (8th ed. 2004)).

¶ 17    Section 505(a)(1) and (a)(2) of the Dissolution Act governs the second step. Section 505(a)(1) provides guidelines to help the trial court determine the minimum amount of child support. The guidelines state that the minimum amount for one child is 20% of the supporting party's net income. 750 ILCS 5/505(a)(1) (West 2010). Section 505(a)(2) provides that the court should apply the guidelines, unless it finds that a deviation from them is appropriate after considering the best interests of the child in light of the evidence presented on several relevant factors. 750 ILCS 5/505(a)(2) (West 2010). These factors include the financial resources of the child; the financial resources of the custodial parent; the standard of living the child would have enjoyed if the marriage had not been dissolved; the physical, mental, emotional, and educational needs of the child; and the financial resources and needs of the noncustodial parent. *Id.* "If the court deviates from the guidelines, the court's finding shall state the amount of support that would have been required under the guidelines, if determinable. The court shall include the reason or reasons for the variance from the guidelines." *Id.*

¶ 18    The issue here does not involve the first step, determining income. Mayfield acknowledged before the appellate court, and still concedes before this court, that a lump-

sum workers' compensation settlement is income under section 505(a)(3). This position is consistent with the holding in *Dodds*, and we believe that case was correctly decided. As the appellate court observed, workers' compensation is compensation for lost wages. 2012 IL App (4th) 110737-U, ¶ 28; see *Cassens Transport Co. v. Illinois Industrial Comm'n*, 218 Ill. 2d 519, 530 (2006); *cf.* 750 ILCS 28/15(d) (West 2010) (stating that, under the Income Withholding for Support Act, "income" includes workers' compensation).

¶ 19    The issue here, however, does involve the second step, apportioning income. As framed in Mayfield's supplemental brief, the question in this appeal is "whether the Trial Courts have discretion, in awarding child support, to apportion a workman's [*sic*] compensation settlement that is intended, by its terms, as a lifetime disability award to equitably meet all parties' needs." Mayfield's argument is less than artfully developed, but it seems partly semantic and partly substantive. He initially insists that, based upon the comment that it was "compelled" to follow *Dodds*, the trial court felt it had no discretion. On that point, we believe that Mayfield misapprehends the trial court's order. The trial court simply meant that it would apply *Dodds*' holding that a lump-sum workers' compensation settlement is income for child support purposes. *Dodds*, in fact, did not address how to allocate such a settlement (see *Dodds*, 222 Ill. App. 3d at 104), so the trial court was not compelled to follow it on that issue.

¶ 20    Mayfield further intimates that, based upon its refusal to deviate from the guidelines, the court may have abused its discretion. Mayfield offers three factors that trial courts could use in apportioning a noncustodial parent's workers' compensation settlement: (1) the "nature and extent of the disability, especially whether the disability was permanent and prevented the worker from further gainful employment"; (2) the "age of the minor child or children and the remaining time for which the injured worker would be responsible for child support"; and (3) "the financial condition of both parties, and the likelihood of other income to the injured worker in the future." Mayfield advocates a "creative and equitable solution" in which the trial court balances the competing interests of a custodial parent in receiving child support and of a noncustodial parent who has suffered a work-related injury in receiving compensation for that injury. According to Mayfield, such a solution would include an order setting child support at 20%, but only of the prorated monthly amount of the lump-sum settlement, and not of the entire settlement.[3]

¶ 21    In support of this approach, Mayfield cites a single case, *In re Marriage of Wolfe*, 298 Ill. App. 3d 510 (1998). In *Wolfe*, the husband was injured in a work-related accident before the parties divorced. After the parties divorced the husband received a settlement from a Structural Work Act claim related to the accident. The husband filed a petition for allocation of the settlement proceeds. The trial court ordered the husband to pay 20% of the portion of the settlement that represented his future lost wages as child support for the parties' six-year-old daughter. The husband appealed, contending that that amount of child support was

---

[3]Based on our own calculations, this approach would yield a significantly smaller amount of child support: Dykes would receive $5,222.70 (20% of $580.30 for 45 months after the date of the settlement, when Jessica becomes 18 years old), as opposed to $47,984 (20% of $239,920).

improper in light of the daughter's age and his financial situation.

¶ 22    The appellate court agreed with the husband and reversed and remanded. *Id.* at 517. According to the appellate court, the husband was permanently disabled, so the lost-wages portion of the settlement compensated him for the remainder of his work life—arguably 25 years, well past the time when the daughter would reach majority. *Id.* at 515. Thus, directing the husband to pay 20% of that portion as child support would be a deviation from the guidelines. *Id.* The appellate court concluded that because the trial court did not explain its reasoning for such a deviation, it abused its discretion. *Id.*

¶ 23    Under section 505(a)(2), the trial court must apply the guidelines, unless it finds that a deviation is appropriate based on the evidence presented by the parties on various factors; if it does, it must explain why. Seemingly, the trial court in *Wolfe* applied the guidelines and did not find a deviation was appropriate. But the appellate court still discerned a deviation based solely on the discrepancy between the years remaining on the husband's child support obligation and the years covered by his settlement. That holding, in effect, turns the statute on its head, requiring the trial court to justify an adherence to the guidelines, rather than a departure from them, when allocating a lump sum. *Wolfe* was wrongly decided and is, therefore, overruled.

¶ 24    In *Rogers*, the issue was whether gifts and loans given to the noncustodial parent from his parents constituted income under section 505 of the Dissolution Act. We held that they were, but noted that the nature of an income stream is "not irrelevant" in calculating child support. *Rogers*, 213 Ill. 2d at 139. We explained:

> "Recurring or not, the income must be included by the circuit court in the first instance when it computes a parents 'net income' and applies the statutory guidelines for determining the minimum amount of support due under section 505(a)(1) of the Act. If, however, the evidence shows that a parent is unlikely to continue receiving certain payments in the future, the circuit court may consider that fact when determining, under section 505(a)(2) of the Act [citation], whether, and to what extent, deviation from the statutory support guidelines is warranted." *Id.*

Thus, a one-time payment is income, but its nonrecurring nature may factor into the trial court's decision on how to allocate it—presumably, under section 505(a)(2)(e), which concerns "the financial resources and needs of the non-custodial parent." 750 ILCS 5/505(a)(2)(e) (West 2010).

¶ 25    Like the gifts and loans in *Rogers*, the lump-sum workers' compensation settlement that Mayfield received was income. Indeed, he treated it as income, and apparently spent most of it. Although he alluded to the nonrecurring nature of the settlement, and proposed an order setting child support at 20% of the prorated monthly equivalent, he never specifically asked the trial court to depart from the guidelines.

¶ 26    More importantly, Mayfield presented insufficient evidence to warrant a deviation under section 505(a)(2). Apparently, Dykes testified that Jessica was "in need of current support," but Mayfield did not testify that Jessica's financial resources; her standard of living if the marriage had not been dissolved; her physical, mental, emotional, and educational needs; or even his own financial resources and needs were such that a downward deviation from the

guidelines was appropriate. He provided no details about his injury or his prognosis for future employment, other than the settlement agreement, which stated only that he is "seeking employment [within] his restriction," but provided telling details about how he spent the settlement. Accordingly, the trial court was correct to set child support at 20% of the lump-sum settlement in the absence of any evidence to support a different amount.

¶ 27                                   CONCLUSION
¶ 28        For the reasons that we have stated, the judgment of the appellate court is affirmed.

¶ 29        Affirmed.