2020 IL App (2d) 190918
No. 2-19-0918
Opinion filed November 4. 2020

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE *ex rel.* THE DEPARTMENT OF HEALTHCARE AND FAMILY SERVICES *ex rel.* GUGULETHU R. MOYO, | ) ) ) ) | Appeal from the Circuit Court of Du Page County |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | No. 18-F-551 |
| TENDAI J. CHAKONA, | ) ) | Honorable Neal W. Cerne, |
| Respondent-Appellee. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Hutchinson and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1   In a proceeding under the Illinois Parentage Act of 2015 (Parentage Act) (750 ILCS 46/101 *et seq.* (West 2018)), the State, on behalf of relators, the Illinois Department of Healthcare and Family Services (Department) and petitioner, Guguletho R. Moyo, appeals a judgment finding that respondent, Tendai J. Chakona, is the father of Moyo's minor daughter, L.M.M., and ordering him to pay child support and medical-insurance costs for L.M.M. The State contends that the court erred in refusing to follow the presumptive guidelines of section 505 of the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) (750 ILCS 5/505 (West 2018)) on what percentage of

respondent's net income to order for child support. The State also contends that the amount of the award was an abuse of discretion. We reverse and remand.

¶ 2                                    I. BACKGROUND

¶ 3      On October 5, 2019, the Department filed a petition alleging that Moyo is the mother of L.M.M., who was born June 2, 2014; that respondent is L.M.M.'s father; and that the Department was providing child support services per the Child Support Enforcement Act (42 U.S.C. § 651 *et seq.* (2018)) and the Illinois Public Aid Code (305 ILCS 5/10-1 *et seq.* (West 2018)). The petition sought a finding that respondent is L.M.M.'s father and an order requiring him to pay child support to the State Disbursement Unit. See 750 ILCS 5/507.1 (West 2018).

¶ 4      The petition asked the court to base child support on section 801(a) of the Parentage Act, which states, "In determining the amount of the child support award, the court shall use the guidelines and standards set forth in Sections 505 and 505.2 of the [Marriage Act]." 750 ILCS 46/801(a) (West 2018). Under section 505(a)(1) of the Marriage Act, the Department shall adopt rules establishing these guidelines. 750 ILCS 5/505(a)(1) (West 2018).[1] Under section 505(a)(1.5), the basic child-support obligation shall be calculated by (1) determining each parent's monthly net income, (2) adding these figures to determine their combined net monthly income, (3) selecting the appropriate amount from the schedule of basic child-support obligations based on the combined monthly net income and the number of children, and (4) calculating each parent's share of the basic obligation. *Id.* § 505(a)(1.5). The receiving parent's share is not payable to the other parent but is presumed to be spent directly on the child. *Id.* Under section 505(a)(2) of the Marriage Act,

_____

[1] Formerly, section 505(a) set child support at a specific percentage of the supporting parent's net income, depending on the number of children. See 750 ILCS 5/505(a) (West 2016).

"[t]he court shall determine child support in each case by applying the child support guidelines unless the court makes a finding that application of the guidelines would be inappropriate" after considering the best interests of the child and any pertinent evidence. *Id.* § 505(a)(2). Under section 505(a)(3.3) of the Marriage Act, there is a rebuttable presumption that the amount of child support that would result from applying the guidelines is "the correct amount of child support." *Id.* § 505(a)(3.3). The petition also requested that the court order respondent to pay for health insurance per section 505(a)(4) of the Marriage Act (*id.* § 505(a)(4)).

¶ 5 On November 3, 2018, respondent appeared. On February 1, 2019, he moved to dismiss the petition, contending that under section 105 of the Uniform Interstate Family Support Act (Support Act) (750 ILCS 22/105 (West 2018)), State assistance for "international child support is available to a resident of a 'foreign country' " but that Moyo and L.M.M. resided in the Cayman Islands, which is not a "foreign country" under the Support Act (see *id.* § 102(5)). The Department responded that the petition was not brought under the Support Act. On May 9, 2015, the trial court denied the motion to dismiss. On May 20, 2019, it denied respondent's motion to reconsider.

¶ 6 On July 17, 2019, the court heard the petition. The court found that respondent is L.M.M.'s father. The parties stipulated that Moyo and L.M.M. resided in the Cayman Islands; that her gross monthly income was $6833.33; and that, because the Caymans have no taxes, her net monthly income was the same figure. Moyo testified that, since before L.M.M. was born, she had requested support from respondent but had received only seven payments of no more than $328 each in 2016. She asked that the award be made retroactive to L.M.M.'s birth, with credits for the payments. The parties then stipulated that respondent's average gross monthly income was $10,259.34 and that he had three minor children for whom he was responsible in addition to L.M.M. Respondent

tendered a financial statement, an addendum, and pay stubs. The State recalled Moyo, who testified that she currently had health insurance for herself and L.M.M., which cost $226 per month.

¶ 7    The court heard argument. Based on the statutory guidelines, the State requested that the court award $733.25 in monthly support and $50.90 monthly toward medical insurance for L.M.M., both retroactive to June 2, 2014. Respondent asked the court to use "individualized deductions" and not "standardized deductions." He noted that, according to the pay stubs, he "ma[de] thirty-two twenty per pay period *** biweekly" for a net income of approximately $6900 per month. Thus, "the number would come down to $600 per month *** in child support," plus $50.90 monthly for health insurance. "That would be the amount that [respondent] would agree to."

¶ 8    The judge stated that the Marriage Act guidelines were presumably based on the cost of child-rearing "either [in] Illinois or [in] the United States." He asked the State's counsel, "If I don't know what the cost of living is in the Cayman Islands, how can I apply an Illinois statute to that because—I guess, my presumption would be that the cost of living is less in the Cayman Islands than it is in Illinois[?]" She responded, "That's why there's financial discovery required from both parties, and Ms. Moyo completed [*sic*] and a financial affidavit was tendered to Respondent in court and it reflects her income as well as her expenses in raising a child." Respondent could have inquired into Moyo's expenses or introduced evidence of the cost of living in the Cayman Islands, but he had done neither. The Illinois legislature had not adopted different guidelines based on residence outside the United States.

¶ 9    The judge replied that the Illinois legislature must have based the guidelines on the cost of living in the United States. He continued:

> "In my mind, there's an obvious difference in the cost of living. I mean \*\*\* to say that it's cheaper to raise a child in Mexico, I think everybody would say it probably is. It's probably cheaper to raise a child in Nicaragua, you know. You hear all the time that it costs only $11 a day to raise a child in some of these foreign countries. *So I agree I have no evidence of it, but isn't that mom's burden*—" (Emphasis added.)

The State responded that respondent had the burden to prove a basis to deviate from the guidelines. The judge ruled that the State had the burden to prove that the statutory level of support was proper as applied "to an international case." He noted that, according to "the online website that has the description of how this formula came about," the guidelines were based on the cost of raising a child in the United States.

¶ 10    The judge "adopt[ed] [respondent's] calculation that $600 would be what the calculator would say." Respondent clarified that, based on the Marriage Act guidelines, the support should be $604.80. He said that his request was lower than the Department's because it was based on his "actual take-home pay rather than the take-home after standardized deductions." He was "literally taking his take-home pay off the pay stubs and inputting that as his net monthly [income]."

¶ 11    The judge stated that he was "not going to use that 604 number," which was merely a "guideline amount." Moreover, "the proponent who's asking for child support should present \*\*\* evidence as to what it should be." The Marriage Act guidelines were not appropriate, because "the child's not being raised here in the United States." The judge continued:

> "And I think, based upon general knowledge, that the cost of living is lower in the Caribbean. I mean, I don't know how much; but I—you know, it's not going to be zero. So I'm going to set child support at $550 a month and—with the agreed contribution of

$50[.90] a month for medical. *** I'm going to make it retroactive to the date of the filing of this case [October 5, 2018]."

¶ 12    The court entered an order consistent with the foregoing. The State moved to reconsider, contending that the court had erred in shifting the burden to it and in deviating from the guidelines based on speculation. The judge denied the motion, explaining that (1) the burden had been on respondent to show a reason to deviate from the guidelines but (2) respondent satisfied that burden by the fact that Moyo and L.M.M. resided abroad. The State timely appealed.

¶ 13                                II. ANALYSIS

¶ 14    On appeal, the State contends that the trial court's child support award cannot stand because (1) the court improperly shifted the burden to the State to prove that the Marriage Act guidelines should govern the amount of the award and (2) the court abused its discretion by awarding only $550 per month. The medical-insurance award is not in dispute.

¶ 15    Although respondent has not filed an appellee's brief, we may reach the merits of this appeal. See *People v. Stoffle*, 2020 IL App (2d) 190431, ¶ 22 (the reviewing court can decide the merits of the appeal if the record is simple and the claims of error are such that the court can easily decide them without the aid of an appellee's brief).

¶ 16    The State argues first that the trial court violated the Marriage Act by requiring it to prove that the guidelines should be followed. This argument is based on statutory construction, which we review *de novo*. See *In re Marriage of Rogers*, 213 Ill. 2d 129, 135-36 (2004). Our duty is to ascertain the intent of the legislature. *Id.* at 136. The best indicator of this intent is the statute's language; if it is unambiguous, it must be given effect. *Id.* We may not depart from the statute's plain language by reading in exceptions, limitations, or conditions that the legislature did not express. *People v. Casas*, 2017 IL 120797, ¶ 18.

¶ 17 The Marriage Act clearly says, "There is a rebuttable presumption *** that the amount of the child support obligation that would result from the application of the child support guidelines is the correct amount of child support." 750 ILCS 5/505(a)(3.3) (West 2018). Therefore, the party seeking a deviation from the guidelines must provide evidence that shows compelling reasons for the deviation. *In re Tate Oliver B.*, 2016 IL App (2d) 151136, ¶ 44.

¶ 18 The trial judge stated that, because Moyo and L.M.M. did not reside in the United States, it was "mom's burden" to prove that the guidelines should apply to "an international case." This reasoning disregarded the plain command of section 505(a)(3.3). At the hearing on the motion to reconsider, the judge acknowledged that the burden was not on the State to justify using the guidelines. However, he held that the presumption in favor of using the guidelines was overcome by the fact that Moyo and L.M.M. resided in the Cayman Islands. Because there was, by the judge's own admission, "no evidence" about the cost of living in the Cayman Islands, placing the burden on the State ignored the plain language of section 505(a)(3.3) by reading in a *per se* exclusion based on foreign residence. Moreover, it contradicted our holding that the presumption must be rebutted by evidence that shows "*compelling reasons*" for the deviation. (Emphasis added.) See *id.* "You hear all the time" does not suffice. In effect, respondent was relieved of his obligation to justify a deviation from the guidelines—even though he did not even request such relief. We hold that the trial court violated section 505(a)(3.3) of the Marriage Act.

¶ 19 We also hold that the court abused its discretion in awarding less than the guideline amount—even by respondent's calculation. See *id.* ¶ 42 (child support award is reviewed for abuse of discretion). Of course, the errors are intertwined. By lowering the award based on nothing more than supposition about the cost of living in the Cayman Islands, the court ordered an unjustified amount under the guidelines of section 505 of the Marriage Act.

¶ 20    We note that respondent requested that the court order $604.80 in monthly child support and based that request on the guidelines. He introduced evidence that his net income was consistent with this amount, tendering pay stubs and a financial statement. Had the trial court specifically found that this amount was proper under the guidelines, we would be inclined to modify the award accordingly. (The pay stubs and financial statement are not included in the record on appeal, and we would have to presume that they were favorable to the judgment. See *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984)). However, the court did not specifically so find—it merely "accept[ed]" that the guidelines would bear out respondent's calculation. Moreover, the State requests that we vacate the award of child support and remand for a new hearing on the issue. Respondent chose not to file an appellee's brief to request alternative relief should we find trial court error. Thus, we affirm the finding of parentage and the award of medical insurance costs, but we vacate the award of child support and remand the cause for the proper resolution of that matter.

¶ 21                                  III. CONCLUSION

¶ 22    For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in part and vacated in part, and the cause is remanded.

¶ 23    Affirmed in part and vacated in part; cause remanded.

**No. 2-19-0918**

| | |
|---|---|
| **Cite as:** | *People ex rel. Department of Healthcare & Family Services ex rel. Moyo v. Chakona*, 2020 IL App (2d) 190918 |
| **Decision Under Review:** | Appeal from the Circuit Court of Du Page County, No. 18-F-551; the Hon. Neal W. Cerne, Judge, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Benjamin F. Jacobson, Assistant Attorney General, of counsel), for appellant. |
| **Attorneys for Appellee:** | No brief filed for appellee. |