2024 IL App (2d) 230003-U
Nos. 2-23-0003 & 2-23-0127 cons.
Order filed August 21, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF ALLISON ZECHMAN, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Petitioner-Appellee, | ) ) ) | |
| and | ) ) | No. 20-D-94 |
| ADAM ZECHMAN, | ) ) ) | Honorable Michael G. Nerheim, |
| Respondent-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court's finding that the respondent was voluntarily underemployed was not against the manifest weight of the evidence where respondent failed to seek similar employment, the trial court did not err when it considered one of the respondent's financial affidavits to calculate his gift income, the trial court did not abuse its discretion when it chose not to impute gift income to the petitioner and instead, reduced the duration of her maintenance award from the statutory guidelines; trial court is affirmed. The respondent's appeal of the trial court's order finding him in indirect civil contempt is dismissed for lack of jurisdiction where respondent failed to file a timely notice of appeal pursuant to Supreme Court Rule 304(b)(5).

¶ 2    In this consolidated appeal, respondent, Adam Zechman, challenges the trial court's

judgment of dissolution that ordered him to pay petitioner, Allison Zechman, maintenance and

child support (No. 2-23-0003). Adam also appeals the trial court's judgment finding him in indirect civil contempt for failing to abide by that order (No. 2-23-0127). We consolidate these appeals. For the reasons that follow, we affirm appeal No. 2-23-0003 and dismiss appeal No. 2-23-0127 for lack of jurisdiction.

¶ 3                                    I. BACKGROUND

¶ 4      The parties were married in 2001, in Chicago, Illinois. Three children were born during the marriage. In January 2020, Allison filed a petition for dissolution of marriage, and Adam filed a counterpetition in February 2020.

¶ 5      In November 2020, the trial court entered an agreed order addressing parenting issues. The order provided that the parties shall have shared parenting responsibilities for the minor children with Allison having the majority of parenting (209 overnights with Allison and 156 overnights with Adam).

¶ 6      All parenting issues were resolved by the agreed order prior to the trial in this case. The issues left to be resolved at trial were those that involved child support and maintenance, which both parties sought from the other. The case went to trial in July and August 2022.

¶ 7      On December 9, 2022, the trial court entered a judgment for dissolution of marriage. The trial court imputed income to Adam in the amount of $89,000 per year after it found that he was voluntarily underemployed. The court also imputed gift income to Adam in the amount of $99,528 per year for the financial assistance he had received "for most of his adult life and relie[d] on ***
to maintain his standard of living."

¶ 8      The trial court's order provided:

"Adam shall pay Allison maintenance in the amount of $1,228.00 per month commencing January 1,2023[,] and continuing the 1st day of each month. *** Adam shall pay to Allison

child support in the amount of $729.00 per month commencing January 1, 2023, and continuing the 1st day of each month thereafter until modified or terminated upon the emancipation of the parties' last child pursuant to Section 510 of the [Illinois Marriage and Dissolution of Marriage Act]."

The court's order also found that there was "no just reason to delay the enforcement or appeal of the judgment."

¶ 9    Adam filed his timely notice of appeal (No. 2-23-0003) on December 30, 2022.

¶ 10    On January 4, 2023, Allison filed a petition for adjudication of indirect civil contempt, for rule to show cause, and other relief. According to Allison's petition, on January 1, 2023, Adam paid Allison $729 for child support but only "$40 – rather than the $1,228 required [for maintenance] pursuant to the [court's December 9, 2022] Judgment." At the time Allision filed her petition, three days after maintenance was due, Adam was "on vacation with the children in Mexico." Adam's failure to comply with the court's December 9, 2022, judgment was willful, contumacious, and without justification. Allison sought an order, issuing a rule to show cause against Adam, finding him in indirect civil contempt, and directing him to pay the amount due and owing, plus attorney fees and costs.

¶ 11    In Adam's January 20, 2023, response to Allison's petition for contempt, he argued that he made a good faith effort to comply with the court's judgment in that he "paid child support in-full and made a partial [$40] payment to Allison for maintenance. *** He simply lack[ed] the financial ability to pay." Adam also asserted that he was "indigent" and admitted that he was in Mexico on January 4, 2023, "on a temporary basis, *** as a guest (along with the children) on *** vacation."

¶ 12    On February 6, 2023, after a hearing, the trial court found Adam in indirect civil contempt because he willfully and contumaciously violated the court's judgment by failing to pay

maintenance for January and February. The court sentenced Adam to six months in the Lake County Jail, but stayed the sentence until March 7, 2023, and set a purge amount of the arrearage ($2381). The court granted Allison leave to file a petition for attorney fees pursuant to section 508(b) of the Act (750 ILCS 5/508(b) (West 2022)). Adam satisfied the purge amount by March 7, 2023.

¶ 13    On March 20, 2023, the court ordered Adam to pay $3334.19 for Allison's attorney fees related to her petition for contempt. The court's order provides, "that there is no just reason for delaying either the enforcement of the judgment or the appeal of the judgment."

¶ 14    On April 17, 2023, Adam filed a notice of appeal (No. 2-23-0127) and listed the trial court's orders of February 6, and March 20, 2023.

¶ 15    Additional facts relevant to the issues on appeal are included in the analysis section of this disposition.

¶ 16                                    II. ANALYSIS

¶ 17                              A. Appeal No. 2-23-0003

¶ 18    At issue in this appeal is whether the trial court erred (1) when it found that Adam was voluntarily underemployed and imputed employment income to him; (2) when it calculated the amount of annual gift income imputed to him; and (3) when it did not impute gift income to Allison.

¶ 19    At the outset, we note that awards of maintenance and child support are presumed to be correct. *In re Marriage of Lugge*, 2020 IL App (5th) 190046, ¶ 15; *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 26. Generally, we review maintenance and child-support awards for an abuse of discretion. *In re Marriage of Schneider*, 214 Ill. 2d 152, 173 (2005) (maintenance); *In re Marriage of Moorthy*, 2015 IL App (1st) 132077, ¶ 41 (child support). An abuse of discretion

occurs when a trial court's finding is arbitrary or fanciful or where no reasonable person would agree with the trial court's decision. *Brill*, 2017 IL App (2d) 160604, ¶ 26. However, when a party challenges a trial court's factual findings regarding a support obligation, we will not reverse those findings unless they were against the manifest weight of the evidence. *Id.* ¶ 30 (maintenance); *Moorthy*, 2015 IL App (1st) 132077, ¶ 41 (child support). A finding of fact is against the manifest weight of the evidence where the opposite conclusion is clearly apparent or where the finding is unreasonable, arbitrary, or not based on the evidence. *Brill*, 2017 IL App (2d) 160604, ¶ 30. With these principles in mind, we address Adam's arguments.

¶ 20                    1. Employment Income - Voluntary Underemployment

¶ 21    Adam maintains that the trial court's finding that he was voluntarily underemployed was against the manifest weight of the evidence because he was terminated from his prior job and Allison presented no evidence that a similar position was available to him.

¶ 22    When determining income for purposes of setting child support and maintenance, a trial court may impute income to a voluntarily underemployed spouse. *In re Marriage of Liszka*, 2016 IL App (3d) 150238, ¶¶ 44-45 (child support); see also *In re Marriage of Ruvola*, 2017 IL App (2d) 160737, ¶ 39 (maintenance).

¶ 23    Here, during the parties' marriage, Adam earned between $90,000 to $300,000 per year as a trader and as a senior executive at a retained search firm. Around Labor Day of 2019 Adam had a mental health episode and was terminated from his position. Within weeks he accepted a part-time job at the Apple Store, the only position for which he applied. In 2022 Adam was on pace to earn approximately $43,000, from his employment at the Apple Store.

¶ 24    Adam's contention that the trial court erred by finding him to be voluntarily underemployed ignores his own testimony. Adam testified that he would not accept a similar

(executive) position even if it was available to him. Adam testified that he did not want, and would not seek, other employment, even if it paid more money.

¶ 25 Further, the fact that Adam had a mental health episode in 2019 does not render the trial court's finding against the manifest weight of the evidence. Adam testified that he was capable of climbing the corporate ladder to become an executive. Further, in his interrogatory responses and at trial, Adam stated that there was no impediment to him seeking executive-level employment. Significantly, Adam testified that he had the ability to seek executive-level employment, but he chose to remain at Apple because he enjoyed the work/life balance and did not want to experience stress due to his "mental health." Considering these facts and the lack of evidence that Adam's mental health limited his employability, we cannot say that the trial court's finding that Adam was voluntarily underemployed is against the manifest weight of the evidence.

¶ 26 Adam also contends that there was insufficient evidence to support the $89,000 the trial court imputed to Adam where 1) the court based its determination on his employment at Foresight, where he was terminated, and 2) Allison failed to present evidence that other jobs with the same salary were available to him.

¶ 27 "The amount of income imputed by the court must be supported by evidence showing that it is commensurate with the supporting parent's skills and experience." *Liszka*, 2016 IL App (3d) 150238, ¶ 46. "When calculating the amount of income to impute, the trial court may consider the supporting parent's income from previous employment. [Citations.] However, a court should not base its income calculation on outdated data that no longer reflect prospective income." *Liszka*, 2016 IL App (3d) 150238, ¶ 47.

¶ 28 We conclude that the trial court did not abuse its discretion in imputing $89,000 in employment income to Adam for child support and maintenance purposes. It is undisputed that

before the dissolution of the marriage, Adam earned an income in the $90,000 to $300,000 range, as a trader and as a senior executive at a retained search firm, even after changing jobs due to layoffs. The trial court found that Adam was involuntarily terminated from Foresight. However, Adam testified that he did not and would not look for similar salaried jobs that could have earned him a similar salary. Based on this evidence, the trial court imputed an income of $89,000 to Adam, which was significantly less than his historic earnings. Because the record supports the trial court's decision, we conclude that it did not abuse its discretion in imputing employment income of $89,000 to Adam.

¶ 29    Adam cites *Liszka*, 2016 IL App (3d) 150238, to support his argument. In *Liszka*, the trial court imputed $17,500 a month ($210,000 per year) to the payor husband because that was the " 'amount that he was living off of and using.' " *Id.* ¶ 48. The appellate court reversed and remanded for the trial court to determine how much income should be imputed to the husband based on his earning capacity, and not on his spending habits. *Id.* ¶ 50. Contrary to the trial court in *Liszka*, here the record indicates that the trial court based its decision on Adam's earning capacity; his employment and earning history, education, and qualifications. Therefore, *Liszka*, is distinguishable from this case.

¶ 30                                2. Gift Income

¶ 31    Next, Adam argues that the trial court erred when it relied, in part, on his February 2020 financial affidavit to impute $99,528 in annual gift income to him for purposes of maintenance and child support. To be clear, Adam does not dispute the court's decision to impute gift income to him, rather he claims that the court erred because it should have relied only on his April 2022 financial affidavit when it calculated the amount of gift income to impute. Adam notes that in his

February 2020 financial affidavit he indicated a monthly deficit of $6844, whereas in his April 2022 financial affidavit he indicated a monthly deficit of $3562.

¶ 32     In support of his argument, Adam quotes *In re Marriage of Rogers*, 213 Ill. 2d 129 (2004), where our supreme court stated, "the relevant focus of section 505 [of the Act] is the parent's economic situation *at the time* the child support calculations are made by the court." (Emphasis added.) *Id.* at 138-39. Adam misreads *Rogers*. In *Rogers*, our supreme court held that yearly gifts that the father obligor received from his parents constituted income for purposes of calculating his child support obligation, even though such gifts may not be forthcoming in subsequent years. *Id.* at 137-38. The father testified that "the gifts and loans from his family 'represent a steady source of dependable annual income *** he has received each year over the course of his adult life.' " *Id.* at 134. Therefore, *Rogers* supports the trial court's consideration of gifts Adam received in prior years to determine income. As such, the trial court did not err when it considered Adam's February 2020 affidavit in calculating his gift income.

¶ 33     Moreover, Adam forfeited any claim of error by failing to object to the admission of his February 2020 financial affidavit and his testimony that it contained a $6844 monthly deficit. When a party does not object to the admission of evidence, that party forfeits the issue on appeal. See *Babikian v. Mruz*, 2011 IL App (1st) 102579, ¶ 13. Accordingly, we reject Adam's argument.

¶ 34     Finally, Adam argues that the trial court erred when it chose not to impute gift income to Allison, and instead, reduced the duration of her maintenance award from the statutory guidelines. Adams maintains that the trial court based its determinations on a finding that is against the manifest weight of the evidence: that Allison did not begin to receive "financial support from her parents until after divorce proceedings began."

¶ 35    To support his argument, Adam references things that are not supported by the record and are, in fact, contradicted by it: for example, Adam misrepresents the trial court's finding when he states, the court found that "Allison did not begin to receive financial support until after *filing for divorce*." (Emphasis added.) In reality, the trial court found that, "the gifts that Allison's family provided to her began only after *the separation*." (Emphasis added.) Adam also incorrectly insists that Allison's father testified that he began providing Allison with financial assistance beginning in June 2019 (three months before the separation). However, his citation to the record reveals that Allison's father denied that he provided financial assistance to Allison prior to June 2019. Further, Allison's father testified that he began providing financial assistance to Allison "a few months before the divorce papers were filed, three or four months before." Allison filed her petition in January 2020, and the parties separated in September of 2019, or four months before Allison filed.

¶ 36    Adam also falsely claims that the trial court failed to consider the financial assistance Allison received from her parents during the marriage. He notes that during the marriage Allison's father loaned the parties a total of $116,000 to assist them with financial troubles and for a down payment on the marital home. However, Allison's father testified that when the parties separated and did not repay the loans, he "recharacterized" the loans as distributions from Allison's non-marital business interest in a family partnership and he reduced Allison's share in the partnership. The trial court found that these unpaid loans that caused the reduction in Allison's share in the partnership were contributions from her nonmarital estate to the marital estate. Therefore, the trial court properly considered the money Allison's father loaned the parties during their marriage.

¶ 37    To support his slapdash argument that Allison received financial assistance from her parents during the marriage, Adam also references loans *he* received from Allison's father between 2011-2015. Adam does not explain how the trial court erred when it failed to impute income to

Allison for loans Adam received from her father. Accordingly, we determine that the trial court's finding that Allison began to receive financial assistance from her parents only after her separation from Adam is not against the manifest weight of the evidence.

¶ 38    Next, Adam maintains that the trial court improperly relied on *Brill*, 2017 IL App (2d) 160604. He contends that the facts of this case are too different from those in *Brill* to warrant a reduction in the duration of maintenance as an alternative to the imputation of gift income. We disagree.

¶ 39    In *Brill*, the appellant husband challenged his maintenance obligations to his wife on the ground that the trial court failed to consider that she received $15,349 annually from her parents. *Id.* ¶ 33. We rejected this claim, reasoning that the trial court had considered the money received from his wife's parents when it calculated the duration of the maintenance award. *Id.* ¶¶ 34-35. We noted that if the trial court had strictly adhered to the statutory maintenance guidelines the wife would have received maintenance for 270 months. *Id.* ¶ 35. Instead, the trial court used its discretion and deviated downward from the guidelines to 96 months, and expressly noted that its decision to do so was, in part, based on the financial assistance received from her parents. *Id.*

¶ 40    Adam argues that *Brill* is different from this case because the evidence established that Allison's father was ready and able to financially assist her and had a history of doing so. However, Adam's citations to the record do not support this claim.

¶ 41    Adam also contends that this case is more like *Rogers*, where the trial court imputed gift income. In *Brill*, we rejected the husband's contention that his case was akin to *Rogers*, as there was evidence that the wife's parent provided her financial assistance when the parties separated, and there was no evidence that they "had provided her with financial assistance every year of her

entire adult life" and therefore the financial assistance did not display the "steady source of dependable annual income" found in *Rogers*. *Id.* ¶ 36, 37.

¶ 42    Here, the trial court, like the wife in *Brill*, and unlike the husband in *Rogers*, found that Allison received approximately $106,300 in gifts from her father for rent and living expenses only during her separation from Adam because she received no assistance from him. *Brill*, 2017 IL App (2d) 160604, ¶ 37; *Rogers*, 213 Ill. 2d at 134. The trial court also found that such "gifts will cease upon Adam being ordered to pay maintenance." See *Brill*, 2017 IL App (2d) 160604, ¶ 37.

¶ 43    Further, like the court in *Brill*, in determining the duration of maintenance, the trial court considered the money Allison received from her parents and deviated downward from the statutory guideline set forth in section 504(b-1)(1)(B) of the Act, from 171 months to 84 months, reviewable. 750 ILCS 5/504(b-1)(1),(B) (West 2022). *Brill*, 2017 IL App (2d) 160604, ¶ 47. The trial court accounted for the $106,300 Allison received during the parties' separation when it reduced her total maintenance award by approximately the same amount -- from $209,988 ($1228 x 171 months) to $102,816 ($1228 x 84 months); or an aggregate reduction of $107,172. Accordingly, we determine that the trial court did not abuse its discretion when it did not impute gift income to Allison for purposes of maintenance but considered the gifts in setting the duration of maintenance.

¶ 44    Next, Adam contends his child-support obligation of $729 per month for his two minor children is "drastically overinflated" and is an "unequal split" of the children's expenses, because the trial court failed to impute gift income to Allison in reliance on *Brill*. He notes that *Brill* did not involve child support. However, this is a distinction without a difference. Our supreme court has stated that " 'income' has the same meaning with regard to maintenance and child support." *In re Marriage of Dahm-Schell and Schell,* 2021 IL 126802, ¶ 39. Therefore, the court did not abuse its discretion when it refused to impute gifts as income to Allison for purposes of child

support.

¶ 45                             B. Appeal No. 2-23-0127

¶ 46    At issue in this appeal is Adam's contention that the trial court erred when it found him in indirect civil contempt for failure to pay maintenance as ordered by the court and sentenced him to jail but set a purge amount.

¶ 47    Before turning to the merits, we must first determine if we have jurisdiction to consider this appeal. The parties do not contest jurisdiction; however, we have an independent duty to ascertain our jurisdiction. *Mayle v. Urban Realty Works, LLC*, 2020 IL App (1st) 191018, ¶ 36.

¶ 48    Although not a final order, an order imposing a penalty for civil contempt is appealable. Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). Under Rule 304(b)(5), "[a]n order finding a person or entity in contempt of court which imposes a monetary or other penalty" is appealable without a Rule 304(a) finding. *Id.* However, Adam's April 17, 2023, appeal of the February 6, 2023, contempt order is well over 30 days limit imposed by Supreme Court Rules 303(a) and 304(b). Ill. S. Ct. Rs. 303(a)(1) (eff. July 1, 2017), 304(b) ("The time in which a notice of appeal may be filed from a judgment or order appealable under this Rule 304(b) shall be as provided in Rule 303."). Further, the trial court's inclusion of 304(a) language (Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016)) in its March 20, 2023, order, did not extend the 30-day time limit Adam had to file his appeal as set forth in rule 303(a)(1). Accordingly, we dismiss Adam's appeal of the court's indirect civil contempt order for lack of jurisdiction.

¶ 49                             III. CONCLUSION

¶ 50    For the reasons stated, we affirm the judgment of the circuit court of Lake County in appeal No. 2-23-0003 and dismiss appeal No. 2-23-0127 for lack of jurisdiction.

¶ 51    Appeal No. 2-23-0003, affirmed.

¶ 52    Appeal No. 2-23-0127, dismissed.